[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13193
Non-Argument Calendar

_____

D. C. Docket No. 3:10-cv-00900-HES-JRK

COLIN RUNGE,

Plaintiff-Appellee,

versus

OFFICER RANDALL SNOW,
individually,
OFFICER D.A. PRATICO,
individually,

Defendants-Appellants,

GORDON SNOW, III,
individually, et al.,

Defendants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 27, 2013)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Colin Runge filed a complaint alleging violations of federal law under 42 U.S.C. § 1983 and state law against Officer Randall Snow, Officer D.A. Pratico, and civilian observer Gordon Snow, III, in their individual capacities, and Jacksonville Sheriff John Rutherford, in his official capacity (collectively "Defendants"), relating to his early morning arrest on October 13, 2007. Runge asserted eight claims in his complaint: Counts I and II assert claims against Officers Snow and Pratico for excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution; Count III asserts a claim for municipal liability against Sheriff Rutherford; and Count IV alleges a conspiracy to violate Runge's civil rights against Officer Snow and Gordon Snow. Counts V through VIII assert state law claims, and the district court's disposition of these claims was not appealed to this Court.

Before the district court, Defendants moved for summary judgment. As relevant to the instant appeal, Officers Snow and Pratico (collectively "Appellants") asserted qualified immunity. The district court denied Officer Snow's motion for summary judgment, denying Officer Snow qualified immunity on the excessive force claim and holding that material issues existed for the jury as

2

to the Count IV civil rights conspiracy claim.  The district court also denied

Officer Pratico's motion for summary judgment, holding that Officer Pratico was

not entitled to qualified immunity on the excessive force claim.  Both officers

appeal from the district court's denial of their summary judgment motions.  After

thorough review of the record, we affirm the district court's denial of summary

judgment on these claims.

## I.  Background[1]

On October 13, 2007, at approximately 3:30 a.m., Officer Snow, an officer

for the Jacksonville Sheriff's Office, was dispatched to the campus of Jacksonville

University in response to a report of a student who was allegedly causing a

disturbance.  Gordon Snow, his brother, was in the police car as a civilian

observer.  After arriving at the Jacksonville University campus, Officer Snow

arrested Runge for disorderly intoxication and resisting an officer without

violence.  Officer Snow handcuffed Runge and placed him in the back of the

police car.  Officer Snow and Gordon Snow then transported Runge to the sally

port at the back of the Duval County Jail.  The actions below took place at this

---

[1]    On interlocutory appeal of a district court's denial of qualified immunity, "we do not make credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor."  See Bozeman v. Orum, 422 F.3d 1265, 1267 (11th Cir. 2005)

location and many of the relevant events were captured on video cameras at the jail facility.

The video captures Officer Snow and Gordon Snow arriving at the jail in a patrol car. The video then shows Officer Snow forcibly pull Runge, who is handcuffed, out of the car and to the pavement below. The district court described this as being pulled "with such force that [Runge] and the officer both begin falling to the ground." D.C. Order at 4. The footage does not record Runge and Officer Snow landing on the pavement or what happens immediately afterwards. However, neither party disputes that Officers Snow and Pratico placed a hobble restraint on Runge.[2]

After approximately two minutes off camera, Officer Snow, Officer Pratico, and Gordon Snow are seen on the video carrying Runge, who is in the hobble restraint, towards the door to the jail. Officer Snow is holding Runge's left arm, Gordon Snow is holding his right arm, and Officer Pratico is holding his legs. We agree with the district court's description of what occurred next: "Defendants continue carrying Runge until [his] head makes contact with the door. The video clearly shows [Runge's] head recoiling upon hitting the door. The defendants then

---

[2]    The hobble restraint results in the hands and feet being strapped relatively close together behind the back, rendering the subject immobile. See Lewis v. City of West Palm Beach, 561 F.3d 1288, 1290 (11th Cir. 2009).

4

place [Runge] on the ground, still in the hobble restraint, on his stomach." D.C.

Order at 4. Runge, while still in the hobble restraint, is then left on his stomach

for approximately eight minutes before he is carried inside the jail.

After being taken inside the intake area of the jail, the jail nurse refused his

admittance for medical reasons. We agree with the district court's description of

what occurred next:

> After being refused admittance, [Runge] is recorded [exiting]
> the intake area, still in handcuffs but no longer in hobble restraint,
> and then being grabbed by Officer Snow and dragged to the patrol car
> by his shirt. Once there, Officer Snow is shown placing his forearm
> against [Runge's] throat and forcing him backward until he is pinned
> against the hood of the car. From there, Officer Snow opens the back
> passenger door of the patrol car, pushes [Runge] head-first into the
> backseat, and proceeds to kick or shove him with his foot. It is not
> clearly shown on the video where Officer Snow's foot makes contact.

D.C. Order at 4.[3]

Runge was then taken to the hospital for treatment. The hospital records

indicate that he suffered hematoma and contusions of the face, as well as

contusions to his chest. He also alleges psychological and mental suffering as a

result of the incident.

## II. Standard of Review

---

[3]    It is apparent from the video that, when the district court referred to the hood of
the car, the district court meant the hood of the trunk of the police car.

5

We review de novo summary judgment rulings and draw all reasonable inferences in the light most favorable to the non-moving party. Craig v. Floyd Cnty., 643 F.3d 1306, 1309 (11th Cir. 2011). Summary judgment is only appropriate if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Roberts v. Spielman, 643 F.3d 899, 901 (11th Cir. 2011).

"We review de novo a district court's resolution of qualified immunity on summary judgment." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012). Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known," Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation marks omitted), "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (quotation marks omitted). If the public official first shows that he was acting within the scope of his discretionary authority—a burden undisputably met by Appellants here—the burden shifts to the plaintiff to establish that qualified immunity is not appropriate. Id. To determine whether a plaintiff has met his burden, a court must both "decide whether the facts that a plaintiff has alleged . . .

6

make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of [defendants'] alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009).  A court may undertake these two inquiries in either order.  Id. at 236.

### III.  Analysis

### A.  Excessive Force

We first turn to Appellants' argument that the district court erred by not granting them qualified immunity on Runge's excessive force claims.  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197.  "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  Graham v. Connor, 490 U.S. 386, 395 (1989); accord Scott v. Harris, 550 U.S. 372, 383 (2007) ("[A]ll that matters is whether [the defendants'] actions were reasonable.").  To assess the reasonableness of a seizure, "we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," Scott, 550 U.S. at 383 (quoting United States v. Place, 462 U.S. 696,

7

703 (1983)) (alteration omitted), "requir[ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," Graham, 490 U.S. at 396.

Here, we agree with the district court that, construing the facts as we must in favor of Runge, the evidence establishes that both Officers Snow and Pratico used excessive force in violation of the Fourth Amendment.

Although it is undisputed that Officer Snow had probable cause to arrest Runge, this fact alone is not dispositive for Fourth Amendment purposes. See Lee, 284 F.3d at 1198. The alleged crimes were not relatively severe, and Runge at all relevant times was either in handcuffs or in a full hobble restraint device. Runge posed very little, if any, immediate threat to the safety of the officers at the jail. Additionally, Runge posed very little, if any, flight risk as there were at least two officers in the vicinity of Runge at all relevant times. Despite these facts, and viewing the record again in light most favorable to Runge, at least one officer intentionally led Runge's head into a metal door. As noted above, Officer Snow was located near Runge's head, holding him up at his left arm, while Officer Pratico was holding up Runge's feet as they hit the door with Runge's head.

8

Appellants argue that Runge's head hitting the metal intake door was an accident and was at most negligent. They argue that videos of the incident support that this was an accident and that there was no constitutional deprivation. We disagree. A reasonable juror, after viewing the incident from the various camera angles and the events immediately preceding and following, could find that one or both of the Appellants intentionally led Runge's head into the jail intake door.[4] As we have held on numerous occasions, the gratuitous use of force when a criminal suspect is restrained and not resisting arrest constitutes excessive force. See Reese v. Herbert, 527 F.3d 1253, 1273-74 (11th Cir. 2008); Hadley v. Gutierrez, 526 F.3d 1324, 1333-34 (11th Cir. 2008); Vinyard v. Wilson, 311 F.3d 1340, 1347-48 (11th Cir. 2002); Slicker v. Jackson, 215 F.3d 1225, 1232-33 (11th Cir. 2000). Moreover, this Court's precedent gave clear notice to a reasonable officer that this excessive force used without justification is unconstitutional. See, e.g., Lee, 284 F.3d at 1199; Vinyard, 311 F.3d at 1348-49; Slicker, 215 F.3d at 1232-33.

Accordingly, we affirm the district court's denial of qualified immunity to

---

[4]    At least with respect to Officer Snow, the inference that this was an intentional and gratuitous use of force is bolstered by his actions soon thereafter. As noted above, the video shows Officer Snow's right forearm against Runge's throat, forcing Runge's head back over the hood of the trunk. The video shows a handcuffed Runge, who, looking at the facts in a light most favorable to Runge, is offering very little, if any, resistance. A reasonable jury could find from the video that Officer Snow was intentionally using gratuitous force. The video even shows a quick chopping movement of Officer Snow's right forearm against Runge's throat, from which a reasonable jury could infer an intent to injure.

Officers Snow and Pratico.

## B. Conspiracy

Officer Snow also argues that he is entitled to summary judgment on Runge's claim that he and Gordon Snow conspired to deprive Runge of his constitutional rights in violation of § 1983. A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted) (quoting N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990)). Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. See Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992).

We agree with the district court that genuine issues of material fact exist from which a reasonable jury could find that Officer Snow and Gordon Snow reached an understanding to deny Runge of his constitutional rights. The evidence

10

shows that Gordon Snow was with Officer Snow during the arrest and in the police car transporting Runge to the jail. Gordon Snow takes a relatively active role in the events at the jail. For example, after Runge has been forcibly removed from the police car by Officer Snow, Gordon Snow is seen retrieving something from the police car and bringing it off camera (where Officer Snow and Runge are located). After Gordon Snow briefly returns to the view of the camera, he walks back off camera where Officers Snow and Pratico are with Runge. He remains out of camera view until he is seen carrying Runge (along with the two officers) towards the jail door and ultimately hitting Runge's head into the jail door. Gordon Snow is then seen retrieving a pair of shoes from the back of the police car and placing them on Runge's back. Additionally, Gordon Snow is within inches of Officer Snow as Officer Snow places his forearm against Runge's throat for approximately five seconds. A genuine issue of material fact exists from which a reasonable jury could find that Officer Snow and Gordon Snow conspired to deny Runge his constitutional rights.

## IV. Conclusion

For the foregoing reasons, we affirm the district court's denial of qualified immunity to Officers Snow and Pratico as to Runge's excessive force claims. We also affirm the district court's denial of Officer Snow's motion for summary

11

judgment on Runge's § 1983 conspiracy claim.

**AFFIRMED.**