[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13225

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:08-cv-00100-HLM

HENRY CRAIG,

Plaintiff - Appellant,

versus

FLOYD COUNTY, GEORGIA, et al.,

Defendants,

GEORGIA CORRECTIONAL HEALTH, LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 20, 2011)

Before CARNES, PRYOR and COX, Circuit Judges.

PRYOR, Circuit Judge:

This appeal presents the question whether Henry Craig, a former detainee at the Floyd County Jail in Rome, Georgia, failed to present sufficient evidence that Georgia Correctional Health, LLC, had a policy or custom of deliberate indifference to the serious medical needs of pretrial detainees in violation of the Fourteenth Amendment. 42 U.S.C. § 1983. While detained for nine days in jail, Craig received sixteen evaluations from nine different employees of Georgia Correctional before he received a computed tomography scan, which revealed that Craig had air, bleeding, and fractures in his head that required neurological surgery. The district court ruled that Craig could not prove a policy or custom of deliberate indifference based on this single incident. Because Craig failed to present evidence that Georgia Correctional had a policy or custom of constitutional violations, we affirm.

## I. BACKGROUND

In the early hours of July 4, 2006, a police officer approached Henry Craig as he walked down a road in Rome, Georgia. Craig had consumed methamphetamine hours earlier, and he behaved erratically and commanded the officer to shoot him. Two other officers arrived, and one of them used a taser to disable Craig. Craig fell, and a puddle of blood formed on the ground beside his head.

An ambulance transported Craig to Floyd Medical Center. The paramedics recorded that Craig's right ear was bleeding and they took a blood sample from Craig. Nurses at Floyd Medical Center took a urine sample from Craig and performed an electrocardiogram test, and a physician cleared Craig for incarceration at the Floyd County Jail.

Officers transported Craig to the jail that same morning. The arresting officer informed Jason Watts, the intake paramedic, that Craig had stated multiple times that he wished to die. Watts observed that Craig had blood around his nose, elevated blood pressure, and an unsteady gait. Watts determined that Craig should be placed in a padded cell for observation and suicide watch. Craig was also scheduled to see a mental health medical provider, which was standard procedure for detainees in padded cells.

Georgia Correctional Health, LLC, is a private contractor that provided health care to the detainees of the Floyd County Jail. A nurse practitioner employed by Georgia Correctional, Susan Hatfield, assessed Craig on July 5, 2006, the morning after his arrest. Hatfield recorded that Craig had dried blood on the outside of his right ear, which she determined was a symptom of a ruptured ear drum. Hatfield also found Craig to be alert and oriented as to time and place and saw that Floyd Medical Center had cleared Craig for incarceration. Craig

3

expressed no complaints about his health to Hatfield during the examination. Hatfield did not obtain Craig's medical records from Floyd Medical Center before she evaluated Craig, nor did she refer Craig to a physician. Based on her assessment, Hatfield determined that Craig's medical condition should be monitored while on suicide watch.

Over nine days, Craig received sixteen evaluations of his health by nine different medical professionals employed by Georgia Correctional. Craig was evaluated by nurses, nurse practitioners, a psychologist, and a physician. During some of these evaluations, Craig failed to voice any complaints about his health. At other times, Craig stated that he had not eaten in five days, that he had only urinated once since arriving at the jail, and that he had severe headaches, neck pain, and a lack of hearing in his right ear. When Craig complained of headaches and other pain, employees of Georgia Correctional gave him acetaminophen, ibuprofen, other pain killers, and muscle relaxants. Craig's symptoms persisted, and a physician, Dr. Walter Smith, examined him. Hatfield and Dr. Smith requested Craig's medical records from the night of his arrest.

On July 13, 2006, Hatfield ordered a computed tomography scan of Craig's head while she awaited receipt of his medical records. The scan revealed that Craig had air and bleeding in his head, along with several fractures. Medical

personnel transported Craig to Floyd Medical Center for treatment and then to Grady Memorial Hospital, where he underwent neurological surgery.

On June 12, 2008, Craig filed a complaint that Georgia Correctional had been deliberately indifferent to his serious medical needs. The district court granted a summary judgment against Craig's complaint. The district court concluded, "[a]t most, . . . [Craig's] evidence only points to one incident—the instant case—involving an allegedly unconstitutional deprivation. Evidence of this single incident, however, simply is not sufficient to establish a custom, policy, or practice" of deliberate indifference. The district court explained that Craig's expert witness, Dr. Jimmy Graham, had no personal knowledge of Georgia Correctional and instead "testified that his opinion was based on his experience providing medical care at other jails." The district court ruled that Craig had failed to establish a genuine issue of material fact about an essential element of his complaint: whether a policy, practice, or custom of Georgia Correctional had violated Craig's constitutional rights. See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978).

## II. STANDARD OF REVIEW

"This Court reviews de novo summary judgment rulings and draws all inferences and reviews all evidence in the light most favorable to the non-moving

party." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c) (1963) (current version at Fed. R. Civ. P. 56(a) (2010)).

### III. DISCUSSION

Craig contends that Georgia Correctional violated his right to due process under the Fourteenth Amendment when it failed to provide him care for a serious medical need. 42 U.S.C. § 1983. "As a pre-trial detainee, [Craig]'s rights exist[ed] under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. . . . Nonetheless, [Craig's] claims are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir. 2009) (internal citation omitted). "To prevail on a deliberate indifference to

serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Id. at 1306–07.

Georgia Correctional is a private entity, but "[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). Craig must prove that Georgia Correctional had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right. Monell, 436 U.S. at 694, 98 S. Ct. at 2037–38. Because municipalities rarely have an official policy that endorses a constitutional violation, Craig "must show that [Georgia Correctional] ha[d] a custom or practice of permitting it and that [Georgia Correctional's] custom or practice [was] 'the moving force [behind] the constitutional violation.'" Grech, 335 F.3d at 1330 (last alteration in original) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989)).

"Proof of a single incident of unconstitutional activity is not sufficient to

7

impose liability" against a municipality. City of Okla. City v. Tuttle, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436 (1985) (plurality opinion). "A pattern of similar constitutional violations . . . is 'ordinarily necessary.'" Connick v. Thompson, 563 U.S. –, –, 131 S. Ct. 1350, 1360 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 409, 117 S. Ct. 1382, 1391 (1997)). "A single incident would not be so pervasive as to be a custom," Grech, 335 F.3d at 1330 n.6, because a custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it," Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991). This requirement of proof "prevents the imposition of liability based upon an isolated incident," McDowell, 392 F.3d at 1290, and "'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality,'" id. (quoting Bd. of Cnty. Comm'rs, 520 U.S. at 403–04, 117 S. Ct. at 1388). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs, 520 U.S. at 404, 117 S. Ct. at 1388. "In the absence of a series

of constitutional violations from which deliberate indifference can be inferred, the plaintiff[] must show that the policy itself is unconstitutional." Estate of Novack ex rel. Turbin v. Cnty. of Wood, 226 F.3d 525, 531 (7th Cir. 2000).

A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality. For example, a former detainee alleged in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004), that a policy or custom of understaffing at a jail had led to a violation of his civil rights when employees of the jail had failed to transport him to a hospital in a timely manner, id. at 1286–89. The record established that the delay involved several employees of the jail, including nurses, officers of the sheriff's office, communications personnel, intake area personnel, a morning watch commander, a day watch deputy, a shift supervisor, a field division deputy, a field division sergeant, and a physician. Id. at 1286–87. The former detainee underwent emergency surgery on his spinal cord more than twenty-four hours after he had reported that he could not urinate and had trouble walking. Id. Although the complaint of the former detainee involved several employees of a municipality and an extended period of time, we concluded that he had failed to prove a policy or custom based only on his "isolated incident." Id. at 1290–91. We determined that, "[w]hile McDowell's case is tragic, he cannot point to

9

another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition. Simply put, this isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy." Id.

Craig's proof of a policy or custom rests entirely on a single incident of alleged unconstitutional activity. Craig presented evidence that several employees of Georgia Correctional evaluated his single injury. Craig complained that the actions and omissions of the employees of Georgia Correctional, taken together, not individually, amounted to deliberate indifference to his serious medical need. Like the former detainee in McDowell, Craig "cannot point to another occasion" when an alleged policy or custom "contributed to or exacerbated an inmate's medical condition." Id. at 1290. Craig instead relies on "[p]roof of a single incident of unconstitutional activity," Tuttle, 471 U.S. at 823–24, 105 S. Ct. at 2436, which is "not sufficient to impose liability" against Georgia Correctional, id. at 824, 105 S. Ct. at 2436.

Craig contends that Georgia Correctional had three "persistent and widespread practices" that led to his complaint of deliberate indifference. First, Craig contends that Georgia Correctional had a practice of not referring detainees to physicians. Second, Craig contends that Georgia Correctional erroneously

10

relied on hospital clearance forms instead of independently clearing detainees for admission into Floyd County Jail and performing their own diagnostic tests. Third, Craig contends that Georgia Correctional had a practice of using the least costly means to treat detainees.

Even if we assume that these practices amount to constitutional violations, Craig did not even present evidence that these practices had been employed by Georgia Correctional for any other detainees regardless of whether the detainees had been injured. The only other evidence that Craig presented was testimony from an expert witness, Dr. Jimmy Graham, who testified that he did not have any personal knowledge of the Floyd County Jail or Georgia Correctional. Dr. Graham instead based his expert opinion on his experience providing medical care at other jails, but that evidence tells us nothing about whether an alleged policy or custom of Georgia Correctional has led to more than one alleged constitutional violation.

Craig alleges that Georgia Correctional had a policy or custom of not referring detainees to physicians and that this policy or custom "was widespread throughout [Georgia Correctional's] organization," but Craig's only proof of this alleged policy or custom is that nine medical providers evaluated him sixteen times over nine days before referring him to a physician for a computed

tomography scan. Craig concedes that a physician also evaluated him on the seventh day of his incarceration, but "only because the doctor was visiting the center that day." Even if we were to assume that employees of Georgia Correctional should have referred Craig to a physician sooner, Craig offered no proof of a policy or custom that was persistent or widespread. Craig has failed to present any evidence of "a series of constitutional violations from which deliberate indifference can be inferred." Cnty. of Wood, 266 F.3d at 531. Instead, Craig relies on his own experience, which is, at most, "[p]roof of a single incident of unconstitutional activity." Tuttle, 471 U.S. at 823–24, 105 S. Ct. at 2436. That proof is "not sufficient to impose liability" under section 1983. Id. at 824, 105 S. Ct. at 2436.

Craig also alleges that Georgia Correctional had a policy or custom of relying on hospital clearance forms, which led to a violation of his constitutional rights, but Craig's only proof of this alleged custom is that, on at least three occasions, Hatfield treated Craig based on the medical clearance form of the Floyd County Medical Center. Craig presented no evidence that Georgia Correctional relied on medical clearances for other detainees. Even if we were to accept the dubious proposition that reliance on hospital clearance forms can amount to deliberate indifference, Craig's evidence falls short of proving a policy or custom

12

of constitutional violations so persistent and widespread as to be "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." City of Fort Lauderdale, 923 F.2d at 1481. At most, Craig's evidence, which involves the evaluation of a single detainee by a single nurse, would tend to prove "a single incident of unconstitutional activity." Tuttle, 471 U.S. at 823–24, 105 S. Ct. at 2436.

Craig also alleges that Georgia Correctional had a policy or custom of using the least costly means of treating patients and that this custom deprived him of his constitutional rights, but even on the highly questionable assumption that the alleged policy or custom would amount to a constitutional violation, Craig again relies on his experience alone to prove a policy or custom. Craig alleges that the medical providers repeatedly gave him pain killers instead of treating him with more costly means. Although several employees of Georgia Correctional treated Craig over the course of nine days, those treatments of him are insufficient to prove that Georgia Correctional had a policy or custom of constitutional violations against detainees that was "persistent," Connick, 563 U.S. at –, 131 S. Ct. at 1359, or "so widespread as to have the force of law," Bd. of Cnty. Comm'rs, 520 U.S. at 404, 117 S. Ct. at 1388.

## IV. CONCLUSION

13

We **AFFIRM** the summary judgment in favor of Georgia Correctional.

COX, Circuit Judge, specially concurring:

I do not join the majority opinion because I am not satisfied that this case involves a "single incident."  I do not have to count "incidents," however, to conclude that Craig has failed to offer proof that can support a finding that there was a custom, policy or practice of deliberate indifference to serious medical needs.  I therefore concur in the result and the judgment.