Ariel **MARANTES**, Plaintiff–Appellant,

v.

**MIAMI–DADE COUNTY**, Ruperto Peart, Russell Giordano, Jose Gonzalez, Jorge Rodriguez, Defendants–Appellees.

No. 15–13333
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

April 28, 2016.

Jay Mitchell Levy, Ryan Marks, Jay M. Levy, PA, John Louis De Leon, Chavez & De Leon, PA, Miami, FL, for Plaintiff–Appellant.

Pam Bondi, Attorney General's Office, Ana Angelica Viciana, Miami, FL, for Defendants–Appellees.

Before HULL, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Ariel Marantes appeals from the district court's dismissal of his amended 42 U.S.C. § 1983 complaint. After careful review, we affirm in part and vacate in part the district court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Amended Complaint

In March 2015, Marantes filed an amended complaint in Florida state court, alleging violations of his federal constitutional rights and state law. He named as defendants Miami–Dade County and Miami–Dade Police Officers Ruperto Peart, Russell Giordano, Jose Gonzalez, and Jorge Rodriguez. In May 2015, the defendants removed Marantes's amended complaint to federal district court. We outline the factual allegations in the amended complaint.

Marantes's amended complaint alleged that, on the afternoon of August 14, 2012, he was at the "Latin American Cafeteria" in Miami, Florida. At some point, he began "exchang[ing] words" with another man and engaging in the start of a fist-fight. Defendant Officers Peart, Giordano, Gonzalez, and Rodriguez were all under-cover at the cafeteria.

According to the amended complaint, Officer Peart, "[b]elieving a potential fist-fight was going to take place," lifted Marantes up into the air and then slammed him twice to the ground. Officer Peart held Marantes to the ground by pushing on his back and using a "Carotid Restraint Hold" (choke hold). The temperature that afternoon was approximately 92 degrees Fahrenheit and the asphalt temperature was upwards of 130 degrees Fahrenheit. While Marantes was on the ground, he suffered burns from the hot asphalt and was unable to breathe.

Additionally, Marantes alleged that Officer Giordano kicked him four times on the head and body while Officer Peart was holding him down. Officers Peart and Giordano eventually handcuffed him, pulled on his arms, shoved him, and rolled him onto his stomach, resulting in great pain. All the while, Officer Gonzalez looked on while smoking a cigar. Marantes stated that he feared for his life and was pleading with all four of the officers to stop the attack. Onlookers screamed as they watched the scene.

Marantes claimed that the incident caused renal and other organ failure, a broken nose, and "other injuries." He required advanced life support and oxygen. Marantes maintained that he "posed no threat" and that he did not resist the officers with violence. He concluded that he did nothing to provoke the defendants' actions.

Marantes further explained in the complaint that the Miami–Dade Police Department falsely arrested him for battery of a police officer and resisting an officer with violence. The state reduced the charges to one count of resisting arrest without violence, a misdemeanor offense.

According to Marantes, the Miami–Dade Police Department and the officers also acted to cover-up their wrongdoing. Marantes asserted that a bystander used a cellphone to videotape the officers beating him, but the officers confiscated the phone and erased the video. Then, the internal investigation process was biased in favor of the officers because it involved leading and open ended questions meant to benefit the Miami–Dade Police Department. Marantes claimed that the four officers who beat him were even involved in a homicide

just days before the August 14, 2012 cafeteria incident.

Marantes alleged that the Miami–Dade Police Department's internal affairs process was a policy or custom that encouraged, or at least allowed, officers to use unlawful force against civilians. He claimed that the investigatory process was "constitutionally flawed" because there was no standard protocol for questioning witnesses, and the questions typically asked "preclude[d] independent investigations and punishment." Marantes stated that Miami–Dade Police Department Director J.D. Patterson was the final policymaker and was responsible for the policy or custom.

Based on these facts, Marantes alleged two Fourth Amendment claims: (1) Officers Peart and Giordano used excessive force against him; and (2) Officers Peart, Gonzalez, and Rodriguez failed to intervene when Officer Giordano was using excessive force. Marantes further claimed that Miami–Dade County had a policy or custom of conducting internal affairs investigations in a manner that ratified police misconduct. His final claim alleged that Miami–Dade County was liable for battery under state law, based on Officer Peart's and Officer Giordano's actions. As relief, he sought compensatory damages, punitive damages, and costs.

## B. Proceedings

After removal, the defendants filed a motion to dismiss the federal claims.[1] The defendants argued that the officers were protected by qualified immunity because there was no constitutional violation and no clearly established law preventing the use of force to stop an active street fight and subdue a person resisting arrest. The defendants also asserted that Marantes had failed to allege the essential elements of a *Monell* claim.[2]

In a counter statement of facts, the defendants alleged that Marantes was actively engaged in a fistfight in the parking lot when Officers Peart and Giordano intervened. Officer Peart directed Marantes to the ground, but Marantes resisted. In order to arrest Marantes, Officer Peart placed him in a "choke hold" while Officer Giordano "issued several distractionary kicks" to make him stop moving his arms. According to the defendants, once Marantes was in handcuffs, they did not use any additional force. Marantes pled no contest to resisting without violence. The defendants filed a certified copy of his criminal judgment.[3]

Marantes responded to the motion to dismiss, asserting that the facts, *as alleged in the complaint,* established clear constitutional violations. He argued that the district court could not consider the facts alleged in the defendants' motion to dismiss. The defendants replied that Marantes failed to carry his burden for the Fourth Amendment claims and failed to directly address and rebut any of their arguments for dismissal of the *Monell* claim.

---

1. The defendants requested that the remaining state law claim be transferred back to state court.

2. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3. The criminal judgment states that Marantes pled no contest to resisting an officer *with* violence. However, it cites Florida Statutes § 843.02, which criminalizes resisting an officer *without* violence. *See* Fla. Stat. § 843.02. As the parties agree that the conviction was for resisting *without* violence, we assume that the judgment contains a clerical error and Marantes's crime of conviction was resisting *without* violence.

In a July 2015 order, the district court dismissed Marantes's Fourth Amendment and *Monell* claims, and transferred his battery claim back to Florida state court. The district court concluded that Marantes failed to carry his burden with regard to the Fourth Amendment claims against the individual officers "because his complaint comprise[d] only conclusory allegations and, second, because he [did] not address any Eleventh Circuit law regarding the use of force on resisting arrestees." The district court concluded that Marantes failed to establish that the officers violated a clearly established right, as this Court has upheld the use of force against individuals being arrested even when they are not resisting. Thus, the individual defendants were entitled to qualified immunity.

The district court also determined that Marantes failed to state a *Monell* claim because he had not shown that the officers violated his Fourth Amendment rights. Alternatively, the district court stated that Marantes did not allege "a County policy or custom of indifference to constitutional rights." Marantes filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir.2010). Although a plaintiff's complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citation omitted). The complaint must introduce facts that plausibly establish each essential element of the asserted cause of action. *See Simpson v.* *Sanderson Farms, Inc.*, 744 F.3d 702, 713 (11th Cir.2014) (affirming the dismissal of a complaint for failure to establish essential elements of the asserted cause of action). At the dismissal stage, we "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir.2010).

## III. FOURTH AMENDMENT CLAIMS

The Fourth Amendment prohibits officers from using excessive force when conducting an arrest. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Courts examine the objective reasonableness of the force in light of the particular circumstances of the case in order to determine whether the force was excessive. *See id.* at 396–97, 109 S.Ct. at 1871–72. We recognize, however, "that the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir.2002).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacity unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir.2003) (quotation marks omitted). Once an officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a(1) constitutional or statutory right (2) that was clearly established at the time of the incident. *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir.2009).

A right may be clearly established by: (1) "case law with indistinguishable facts"; (2) "a broad statement of principle within the Constitution, statute, or case law"; or (3) "conduct so egregious that a constitu-

tional right was clearly violated." *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291–92 (11th Cir.2009): The case law must come from a "materially similar case" already decided by the U.S. Supreme Court, this Court, or the highest state court in the state in which the case arose. *Terrell v. Smith,* 668 F.3d 1244, 1255–56 (11th Cir.2012) (quotation marks omitted).

Taking Marantes's version of the facts in the amended complaint, we conclude that the district court erred in dismissing the amended complaint against Officer Giordano, who allegedly kicked and beat Marantes after he was restrained, but did not err in dismissing the other officers.

## A. Excessive Force—Officer Peart

■ First, Marantes failed to show that Officer Peart violated a clearly established right during the arrest. Marantes acknowledges that he was engaged in a fist-fight, however briefly, when Officer Peart approached him to intervene. In order to end the fight and arrest Marantes, Officer Peart knocked Marantes to the ground and subdued him by holding him down and employing a choke hold. Once Marantes was in handcuffs, Officer Peart moved Marantes to his stomach and pulled on his arms. We believe that the force employed by Officer Peart did not exceed the degree of force that comes with every arrest, particularly when the arrestee was exhibiting violence moments earlier. *See Rodriguez,* 280 F.3d at 1351. Again, Marantes's amended complaint concedes that he was in a fistfight on the street.

Furthermore, in *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1555–56, 1559–60 (11th Cir.1993), this Court held that an officer did not violate clearly established law by pushing a man, standing with his hands up after being arrested for a building code violation, against a wall, putting him in a choke hold, and then handcuffing him. Officer Peart's use of force in the instant case was roughly equivalent to the force used by the officer in *Post* and was significantly more reasonable because Marantes had engaged in a more violent crime than violating a building code. *See Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1871–72. Even assuming that Officer Peart's conduct violated the Fourth Amendment, in light of binding precedent such as *Post,* Officer Peart was not on notice that he was acting unlawfully. *Moore v. Pederson,* 806 F.3d 1036, 1046–47 (11th Cir.2015) ("The touchstone of qualified immunity is notice. . . . [A] reasonable official [must] understand that his conduct violates that right." (citation omitted)).

■ We likewise cannot locate any clearly established law that would have informed Officer Peart that restraining an arrestee on hot pavement violates the Fourth Amendment. Not every reasonable officer would have known that the pavement was hot enough to cause injurious burns, and the complaint provides no indication that Marantes informed any of the officers that the pavement was burning him. Thus, this was not "conduct so egregious" that it would be obvious to an officer that he was using unlawful force.[4] *See Lewis,* 561 F.3d at 1292.

## B. Excessive Force—Officer Giordano

The district court erred, however, in dismissing Marantes's excessive force claim against Officer Giordano. In his complaint, Marantes alleged that Officer Giordano kicked him "about the head and body" while he was "restrained" by Officer

---

4. To the extent that Marantes alleged that Officer Giordano also pulled on his handcuffed arms or rolled him over, Officer Giordano was protected by qualified immunity for the same reasons as Officer Peart.

Peart. Officer Peart was holding him against the ground by pressing on his back and using a choke hold. Marantes claimed that he was "pleading for help" while he was being kicked. He stated that he never made "any threat of force." The interaction resulted in serious injuries, including organ failure, which necessitated life support.

The district court granted Officer Giordano qualified immunity after finding that Marantes never alleged that the defendants "used any force on him after he was subdued." The court primarily characterized Marantes as a "resisting arrest[ee]," but stated based on *Post,* that even if Marantes was not resisting at all, Officer Giordano's actions did not violate a clearly established right.

There are two problems with the district court's analysis. First, regarding Marantes's allegations as true and drawing all reasonable inferences in his favor, Marantes alleged that Officer Giordano kicked him after he was subdued. Marantes claimed that Officer Peart was restraining him and holding him to the ground when Officer Giordano issued the kicks. Once he was on the pavement, there is no indication in the complaint that Marantes was resisting, with or without violence. Second, *Post* does not settle the qualified immunity question because Officer Giordano did much more than push Marantes. Officer Giordano kicked Marantes four times on the head and body with enough force to cause injuries warranting life support. Officer Giordano's use of force far surpassed the shoving and choke hold at issue in *Post.*

While the defendants argue that Marantes's conviction for resisting without violence compels us to conclude that Marantes was resisting arrest at the time that Officer Giordano kicked him, the defendants are mistaken. In *Hadley v. Gutier-rez,* 526 F.3d 1324, 1332 (11th Cir.2008), this Court held that, when a person pleads guilty to resisting arrest in Florida and later files a civil suit alleging excessive force in the course of the arrest, the excessive force claim is not barred by collateral estoppel. This Court explained that a conviction for resisting arrest is non-specific and does not necessarily reveal anything about whether the arrestee was resisting during or after the challenged use of force. *See id.* Thus, we are free to—and indeed must—look to the allegations in the amended complaint as to the timing of the resistance in relation to the allegedly excessive force.

 Having established that Marantes's amended complaint, when properly construed in his favor, states that he was subdued and asking for help at the time Officer Giordano kicked him four times, we must conclude that there was a constitutional violation. *See, e.g., Edwards v. Shanley,* 666 F.3d 1289, 1296 (11th Cir. 2012) (holding that there was excessive force when an officer allowed his dog to continue attacking a fleeing suspect after the suspect was "laying [sic] prone with his hands exposed and begging to surrender" and the officer could have safely arrested the suspect, and explaining that the officer "*increased* the force applied at the same time the threat presented by [the suspect] *decreased*"). Moreover, using injurious force on a suspect who does "not pose a threat of bodily harm to the officers or anyone else" at the time of arrest, and who is not "attempting to flee or to resist arrest," is "conduct so egregious that a constitutional right [is] clearly violated" even in the absence of factually similar case law. *See Priester v. City of Riviera Beach,* 208 F.3d 919, 927 (11th Cir.2000); *see also Lewis,* 561 F.3d at 1292.

Based on the facts in the amended complaint, Officer Giordano was not entitled to

qualified immunity for repeatedly kicking Marantes after Officer Peart had him already restrained. On remand, the district court is ordered to reinstate Marantes's claim that Officer Giordano violated the Fourth Amendment by kicking him during the course of the arrest.

## C. Failure to Intervene

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir.2002). For liability to attach, the plaintiff must show "that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley*, 526 F.3d at 1331. Whether the officer had time to intervene is a relevant consideration. *See Priester*, 208 F.3d at 925 (reversing a judgment in favor of the defendant on a failure-to-intervene claim after concluding that the defendant "had time to intervene" but failed to do so).

▮ Having already decided that Officer Giordano's use of force was excessive, we now must determine whether any of the other officers had time and were in a position to intervene. *See Hadley*, 526 F.3d at 1331. Marantes alleged that Officer Peart was holding him down when Officer Giordano kicked him and that Officer Gonzalez observed the arrest while smoking a cigar. Drawing all reasonable inferences in Marantes's favor, it still appears that Officer Giordano kicked him four times in rapid succession without warning, which would leave insufficient time for any of the other officers to issue a verbal command or physically prevent Officer Giordano from that kicking. At a minimum, Marantes did not allege any facts that would allow us to conclude that the officers had time and were in a position to intervene. *See Priester*, 208 F.3d

at 925. Therefore, the district court properly dismissed Marantes's failure-to-intervene claim.

## IV. *MONELL* CLAIM

To state a *Monell* claim, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.2004). The Supreme Court has explained that the custom or policy must be the "moving force" behind the constitutional deprivation for there to be sufficient causation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978).

"A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997). To establish the existence of a custom, the plaintiff must show a "longstanding and widespread practice." *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir.2011) (quotation marks omitted). Thus, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Id.* at 1311. "[C]onsiderably more proof" is necessary. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ("But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case. . . .").

As an initial matter, Marantes challenges only one of the district court's two grounds for dismissing his *Monell* claim. While he argues that the district court erred by finding that there was no constitutional violation on which to premise *Mo-*

*nell* liability, he has not attacked the district court's alternative ruling that he failed to allege a policy or custom. Under our case law, the judgment is due to be affirmed on the unchallenged ground. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir.2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

■ In any event, the district court's judgment is correct on the merits. Even though we agree that Marantes sufficiently pled a constitutional violation, he did not show that Miami–Dade County had a custom or policy of encouraging excessive force, or that the custom or policy caused his injury.

Marantes has not cited a policy directly encouraging excessive force; rather, he contends that the Miami–Dade County Police Department's internal affairs process is ineffective, which in turn sends an implicit message to police officers that they can abuse civilians without punishment. Marantes has pointed to only one incident, however, to show that the internal affairs process was ineffectual by custom—his own experience. And, even broadly construing the amended complaint, he has cited only two incidences of alleged excessive force—his arrest and a homicide involving the same set of officers who arrested him. These allegations do not show that the County had a "longstanding and widespread practice" of encouraging excessive force. *See Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436; *Craig*, 643 F.3d at 1310. Nor do they show that the alleged custom was the "moving force" behind Officer Giordano kicking Marantes's head and body. *See Monell*, 436 U.S. at 690–94, 98 S.Ct. at 2035–38. The district court properly dismissed the *Monell* claim.

## V. AMENDMENT

Marantes cites *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985), and asserts that a district court must "give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." While this rule still applies to *pro se* litigants, Marantes has counsel, and this Court sitting *en banc* has abrogated *Friedlander* by providing that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, *who is represented by counsel,* never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir.2002) (*en banc*) (emphasis added). Therefore, the district court did not err by dismissing Marantes's claims without *sua sponte* ordering him to re-plead his amended complaint.

We also note that, even if Marantes were proceeding *pro se*, he still would not have had a clear right to amend his complaint *sua sponte.* Marantes already amended his complaint while his action was in state court, and our case law does not require a district court to give a *pro se* litigant multiple opportunities to amend. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991) ("[A] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *abrogated by Wagner*, 314 F.3d at 542.

## VI. CONCLUSION

We affirm the district court's dismissal of Marantes's *Monell* claim against Defendant Miami–Dade County and his Fourth

Amendment claims against Defendant Officers Peart, Gonzalez, and Rodriguez. However, we vacate the district court's dismissal of Marantes's Fourth Amendment claim that Officer Giordano used excessive force by kicking him during the arrest. The district court shall reinstate this claim against Officer Giordano, in addition to the state law claim against Miami–Dade County over which it continues to have supplemental jurisdiction, and resume the proceedings. We express no opinion on the state law claim or the ultimate outcome of Marantes's case.[5]

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

**5.** While Marantes stated in the amended complaint that the officers destroyed a bystander's video recording of the incident, he suggests in a later filing that there is at least one surviving video, which is not part of the record. This video, when and if filed, could possibly help clarify which party's statement of facts is true, but it is not in this record and we cannot consider it.