[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15882
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-03211-SCJ

CYNTHIA YATES,

Plaintiff-Appellant,

versus

COBB COUNTY SCHOOL DISTRICT,
CHARLES R. ROGERS,
Cobb County School District Police Officer,
KATELYN BEER,
DONNIE GRIGGERS,
RENAE KIGER, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 4, 2017)

Before HULL, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff Cynthia Yates, proceeding pro se, appeals the district court's grant of summary judgment in favor of the defendants, the Cobb County School District ("CCSD") and various school officials, in her 42 U.S.C. § 1983 action alleging, inter alia, violations of her First, Fourth, and Fourteenth Amendment rights. After review, we affirm.

## I.  BACKGROUND FACTS

Yates's claims stem from an incident during a freshman advisement event at her daughter's high school. Yates became frustrated with the efficiency of the event and, in expressing her frustration to a faculty member, stated, "No, I've had enough. Whoever organized this needs to be shot in the head." Although Yates did not know it at the time, that faculty member, defendant Gillian Moody, was the event's organizer.

The next day, the principal, defendant Donnie Griggers, asked a school resource officer, defendant Charles Rogers, to investigate the incident. School employees, including defendants Moody, Katelyn Beer, Renae Kiger, and Kristin King, provided Officer Rogers with statements about what they observed. Several witnesses described Yates as very upset, yelling, and repeating several times the statement that Moody should be shot in the head.

2

Officer Rogers obtained a warrant to arrest Yates for disrupting a public school. Yates was later arrested, but the charge ultimately was nolle prossed. Several months later, an assistant principal at the school, defendant Arthur O'Neill, incorrectly informed Yates during a telephone conversation that a criminal trespass warrant prohibited her from entering school property.

Yates then commenced the present suit, alleging that: (1) the defendants gave false statements to secure her arrest in retaliation for her exercise of her right to free speech; (2) the defendants caused her to be falsely arrested; and (3) the defendants violated her due process and voting rights by informing her that she was prohibited from accessing school property. Yates asserted, inter alia, § 1983 claims under the First, Fourth, and Fourteenth Amendment and also a claim under Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978) against the CCSD.[1] Yates sought compensatory and punitive damages, but not injunctive relief.

Ultimately, the district court granted the defendants' motion for summary judgment. Yates timely appealed. Below, we address the issues on appeal and why Yates has shown no reversible error in the district court's rulings in this case.

---

[1]Yates also asserted state law claims, over which the district court declined to exercise supplemental jurisdiction. Because on appeal Yates does not challenge the district court's ruling on her state law claims, they are deemed abandoned. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

## II.  DISCUSSION

### A.    Discovery Ruling

The district court did not abuse its discretion when it denied Yates's motion

to compel discovery.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir.

2009).  First, Yates's motion to compel was untimely under the Northern District

of Georgia's Local Rules.  Discovery concluded on March 3, 2016.  The

defendants responded to Yates's interrogatories on March 21, 2016.  Thus, Yates

had 14 days from March 21, 2016, or until April 4, 2016, to file her motion to

compel based on the defendants' responses to her interrogatories.  See N.D. Ga.

L.R. 37.1(B).  However, Yates did not move to compel until April 15, 2016,

missing the April 4, 2016 deadline by 11 days.  Furthermore, Yates did not ask for

a filing extension and has not shown why she could not have filed her motion any

sooner than she did.

Second, Yates's motion to compel was 32 pages long (not including 15

pages of attachments).  Thus, her motion exceeded the district court's 25-page

limit for briefs in support of motions and without obtaining prior permission.  See

N.D. Ga. L.R. 7.1(D).  All litigants, even those who are pro se, must comply with

court rules.  Albra v. Advan, 490 F.3d 826, 829 (11th Cir. 2007); Moon v.

Newsome, 863 F.2d 835, 837 (11th Cir. 1989).  Accordingly, we cannot say the

district court abused its discretion in denying her motion to compel.

4

## B.    Individual Capacity Claims for Damages

The district court did not err in concluding that the defendants, sued in their individual capacities, were entitled to qualified immunity as to Yates's claims that they violated her First, Fourth, and Fourteenth Amendment rights.[2]

### 1.    Qualified Immunity

To be eligible for qualified immunity, a government official must establish that he was acting within the scope of his discretionary authority. Mathews v. Crosby, 480 F.3d 1265, 1269 (11th Cir. 2007). If the defendant makes this showing, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id.[3] To do this, the plaintiff must establish: (1) that the facts construed in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right; and (2) that the right was "clearly established" at the time of the defendant's conduct. Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010). "Both elements of this test must be satisfied for

---

[2]We review de novo a district court's grant of summary judgment, drawing all reasonable inferences and viewing the evidence in the light most favorable to the nonmoving party. Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

[3]On appeal, Yates does not challenge the district court's conclusion that the defendants acted within the scope of their discretionary authority and has abandoned any argument to that effect. See Timson, 518 F.3d at 874.

5

an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id.

As to the second prong of the qualified-immunity inquiry, a constitutional right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right . . . ." Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (quotation marks omitted). The critical inquiry is whether the defendant had "fair warning" that his conduct was unlawful. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002). Law is clearly established by decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state where the case arose. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997). General statements of the law contained within the Constitution, a statute, or case law may sometimes provide "fair warning" of unlawful conduct. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

2.    First Amendment Retaliation Claim

With regard to Yates's First Amendment claim, Yates did not cite, and our own research has not revealed, a case in which the U.S. Supreme Court, the Georgia Supreme Court, or this Court has addressed the extent to which school officials may limit a parent's private speech while attending a school event. In fact, the cases the district court and the parties discussed to evaluate whether

6

Yates's First Amendment rights had been violated almost all involved student speech of one kind or another.  See, e.g., Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 108 S. Ct. 562 (1988); Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 89 S. Ct. 733 (1969); Bannon v. Sch. Dist. of Palm Beach Cty., 387 F.3d 1208 (11th Cir. 2004).[4]  Most of these cases, starting with Hazelwood, involved a student's "school-sponsored expression," that is: (1) speech that might reasonably be perceived to bear the school's imprimatur, (2) that is supervised by the faculty, and (3) is designed to impart knowledge or skills to students or audiences.  See Jane Doe I v. Valencia Coll. Bd. of Trs., 838 F.3d 1207, 1211 (11th Cir. 2016).[5]

One case, Tinker, involved private speech by individual students that merely happened to occur on the school campus, and thus applied a different standard than the standard in Hazelwood to determine whether the school could restrict the student's speech.  Id. at 1211-12.  Applying in part the Tinker standard, this Court concluded that school officials could restrict a student's private expression "that

---

[4]The only other First Amendment case cited by the parties and considered by the district court, Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 105 S. Ct. 3439 (1985), did not involve speech on school property at all.  Instead, Cornelius addressed a charitable organization's First Amendment right to participate in the Combined Federal Campaign charity drive directed at federal employees and outlined general principles for government-created public or nonpublic fora.  See 474 U.S. at 797-806, 105 S. Ct. at 3446-51.

[5]We note that the U.S. Supreme Court's other seminal cases addressing the scope of the First Amendment in the school context also involved student speech.  See Morse v. Frederick, 551 U.S. 393, 127 S Ct. 2618 (2007); Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 106 S. Ct. 3159 (1986).

reasonably could be perceived as a threat of school violence, whether general or specific, while on school property during the school day." See Boim v. Fulton Cty. Sch. Dist., 494 F.3d 978, 983-85 (11th Cir. 2007).  This Court also recently clarified that alleged retaliation for a student's private complaints made to school officials is governed by the Tinker standard, rather than the Hazelwood standard. See Valencia Coll. Bd. of Trs., 838 F.3d at 1211.

This case does not involve student speech at all.  Instead, it involves a parent's speech occurring outside of both the classroom and the ordinary school day.  As Yates herself points out, the advisement event was designed for parents to attend, although it did not exclude students, and the event was held at school, in the evening and after school hours.  Moreover, the parent's speech was not "school sponsored speech," but rather private complaints to a school official that occurred during a school sponsored event attended by other parents and students.

In light of these significant distinguishing characteristics between Yates's case and the First Amendment cases cited above, we agree with the district court that Yates has not shown that her First Amendment rights in this context were clearly established.  Said another way, no clearly established law gave the defendants fair warning that their conduct in these particular circumstances would violate Yates's First Amendment rights.  See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (explaining that the critical inquiry of whether the

8

law provides the defendant with fair warning is undertaken in light of the specific context of the case rather than as broad general propositions).

### 3.    Fourth Amendment False Arrest Claim

The district court also did not err in concluding that defendant Rogers, the school resource officer who obtained the warrant for Yates's arrest, was entitled to qualified immunity.  This is so because a reasonable officer in Rogers's shoes could conclude that probable cause existed and that the arrest warrant should issue.[6]

The Fourth Amendment prohibits an officer from making a false statement intentionally or with reckless disregard for the truth in order to obtain a warrant. See Malley v. Briggs, 475 U.S. 335, 343-45, 106 S. Ct. 1092, 1097-98 (1986); Kelly v. Curtis, 21 F.3d 1544, 1553-54 (11th Cir. 1994).  A defendant police officer "whose request for a warrant allegedly caused an unconstitutional arrest" is entitled to qualified immunity unless "a reasonably well-trained officer in the [defendant officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the [arrest] warrant."  Malley, 475 U.S. at 344-45, 106 S. Ct. at 1098; Grider, 618 F.3d at 1257

---

[6]Yates has abandoned her Fourth Amendment claims against all defendants except Officer Rogers.  Yates argues that the faculty members' witness statements were untrue, but she does not explain how their actions in providing those witness statements give rise to a Fourth Amendment violation.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (stating that a party abandons an issue raised in a perfunctory manner, without providing supporting argument and authority).

9

(explaining that "arguable probable cause" is present where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed).

Under O.C.G.A. § 20-2-1181, it is "unlawful for any person to knowingly, intentionally, or recklessly disrupt or interfere with the operation of any public school." The terms "disrupt" and "interfere" in the statute are given their natural, obvious, and ordinary meanings. In re D.H., 663 S.E. 2d 139, 140 (Ga. 2008).

After defendant Griggers asked Officer Rogers to investigate the incident, Officer Rogers received faculty members' written statements collected by an assistant principal. According to written statements provided by defendants Moody and Beers, two guidance counselors who were manning the event's check-out table, Yates approached their table and yelled at them, grew angrier, and repeated several times the comment that the event organizer should be shot in the head, even after Moody identified herself as the event organizer. After Moody checked Yates out and handed her the paperwork, Yates continued complaining and would not leave until Moody took out her phone and began to call for a school resource officer. Defendant Kiger, a faculty member stationed at a table outside the advisement room, stated that Yates continued to complain very loudly as she exited the event, pounded on Kiger's table, and stated more than once that whoever

10

planned the event should be shot in the head. Another faculty member, defendant King, stated that after the incident Moody was "very upset."

After Officer Rogers reviewed the statements and personally spoke with some of the eye witnesses, he determined that there was probable cause to believe Yates had violated O.C.G.A. § 20-2-1181. Officer Rogers prepared an incident report outlining the events as described in the witness statements. He also prepared a warrant application in which he averred:

> The school was having a 9th grade advisement for students and parents. Ms. Cynthia Yates was visibly upset and started yelling at teachers and Counselors and when they tried to explain she would interrupt them and keep yelling. She told the Counselor, Gillian Moody that she should go shoot herself in the head several times in front of other teachers and staff and in front of her own daughter, who is a 9th grade student. Other staff tried to resolve the issue but Ms. Yates would not listen and would keep interrupting them.

Officer Rogers submitted the warrant application to a magistrate judge and also testified to the magistrate judge that Yates became frustrated during the event and stated that the event organizer should be shot in the head. Officer Rogers also testified that Moody was visibly shaken and needed to be escorted to her vehicle after the event. The magistrate judge found that there was probable cause to arrest Yates and signed the warrant.

About a week later, Yates was arrested at her home.  The state prosecutor later declined to prosecute the charge after Yates agreed to write a letter of apology and undergo an anger management evaluation.[7]

Yates admitted that she told defendants Moody and Beers that the event organizer should be shot in the head, but described her comment as "a hyperbolic statement."  Yates denied yelling at teachers and counselors, and contended that, to the extent the faculty members said otherwise in their written statements, those statements were false.  The problem for Yates is that she did not show that Officer Rogers knew or should have known that those faculty statements—that Yates yelled—were false.

The statements of defendants Beer, Moody and Kiger were all consistent in reporting that Yates was yelling during the incident.  Yates does not point to any facts or circumstances within Officer Rogers' knowledge that would have suggested to him that the three faculty members were lying when they said Yates yelled.  Finally, although the witness statements did not state that Moody was visibly shaken by the incident and needed to be escorted to her car, Officer Rogers said in his affidavit that he also spoke with the witnesses.  Thus, because Officer Rogers could have gathered this information during those conversations, Yates has

---

[7]It is undisputed that Officer Rogers, an employee of the Cobb County School District, did not participate in Yates's arrest.  Thus, the only basis for Yates's false arrest claim against Officer Rogers is his securing of the arrest warrant.

12

not shown that he knew or should have known that this was not true.  Accordingly, Yates failed to show that Officer Rogers intentionally or recklessly included false information in his warrant application.

As to the warrant, Officer Rogers had evidence that Yates: (1) grew angry and began yelling during the advisement event attended by other parents and students; (2) said multiple times that the event's organizer should be shot in the head, and persisted in making this statement to Moody once she knew Moody was the event's organizer; (3) pounded her hand on a table as she left the event; and (4) caused Moody to have trouble conducting the remainder of the event effectively.  In light of these facts, and given the ordinary meanings of "disrupt" and "interfere," a reasonable officer could have believed there was probable cause to believe Yates had violated O.C.G.A. § 20-2-1181 and that an arrest warrant should be sought.  Officer Rogers therefore is entitled to qualified immunity because the information he provided to the magistrate judge amounted to arguable probable cause.

## C.    <u>Monell</u> **Claim Against the Cobb County School District**

Yates argues that the defendant CCSD violated her Fourteenth Amendment due process rights by issuing a criminal trespass warrant, which prohibited her

from accessing school property, without providing notice to her.[8]  The district court did not err in granting summary judgment to the CCSD on Yates's due process claim.

A school board may not be held liable for constitutional deprivations arising under § 1983 based on a theory of respondeat superior.  See Doe v. Sch. Bd. of Broward Cty., 604 F.3d 1248, 1263 (11th Cir. 2010).  Municipalities and other local governmental entities are "persons" for purposes of § 1983, but may be held liable only where a policy or custom of the municipal entity is the moving force behind the constitutional deprivation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94, 98 S. Ct. 2018, 2035-38 (1978).  To establish a Monell claim, the plaintiff must show that: (1) her constitutional rights were violated; (2) the municipal entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom cause the violation.  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

To satisfy the "policy or custom" requirement, the plaintiff must show an official policy, the actions of a municipal official with final policymaking authority, or an unofficial custom or practice that is so well-settled and pervasive that it assumes the force of law.  Denno v. Sch. Bd. of Volusia Cty., 218 F.3d

---

[8]On appeal, Yates has abandoned her Fourth Amendment due process claims against the individual defendants because she argues only that the CCSD's policy caused the alleged constitutional violation.

1267, 1276-78 (11th Cir. 2000). To be a final policymaker, a municipal official must possess "the authority and responsibility for establishing final policy with respect to the issue in question." Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989); see also Doe v. Sch. Bd. of Broward Cty., 604 F.3d 1248, 1264 (11th Cir. 2010) (explaining that a principal vested with discretion to make an initial decision was not the final policymaker for the school board because the decision was subject to review by the superintendent). To establish the existence of a custom, the plaintiff must show a "longstanding and widespread practice." Craig v. Floyd Cty., 643 F.3d 1306, 1310 (11th Cir. 2011). An isolated incident will not suffice; rather, a pattern of similar constitutional violations ordinarily is necessary to show that policymaking officials knew of, but failed to stop, the practice. Id. at 1310-11.

Neither this Court nor the Supreme Court has addressed whether, and under what circumstances, a school board violates a parent's constitutional rights by restricting the parent's access to his or her child's school. However, even assuming arguendo that parents have a constitutional right to access school property, Yates has not shown that a policy or custom of the CCSD deprived her of that right.

The undisputed evidence showed that: (1) per CCSD's policy, criminal trespass warnings prohibiting a person's presence on school property were issued in writing and only by school district police officers; (2) school principals, but not

15

other school employees, could request that an officer issue a criminal trespass warning; (3) Officer Rogers did not issue a criminal trespass warning against Yates, and neither of the high school's principals asked him to do so; and (4) the CCSD's police department maintained a log of criminal trespass warnings issued against individuals and had no record that a criminal trespass warning was ever issued against Yates.

The only evidence Yates points to is her phone and email conversations with defendant O'Neill, an assistant principal at the high school, seven months after Yates's arrest. These conversations took place because Yates planned to come to the high school to formally withdraw her daughter, who was attending a new school. Defendant O'Neill was told by another staff member that a criminal trespass "warrant" existed as a result of the incident at the advisement event.[9] Defendant O'Neill relayed this information to Yates, warned her that she would be arrested if she came to the school, and said that he could withdraw Yates's daughter over the phone. In follow-up emails, Yates complained that she had not received notice of the warrant. Defendant O'Neill advised Yates to contact the CCSD's department of public safety to address her concerns about the warrant, but Yates did not do so.

---

[9]Although defendant O'Neill used the term "warrant," he misspoke, as there is no such thing as a criminal trespass warrant, only a criminal trespass warning.

16

Yates did not present any evidence that any school official, whether authorized or not, ever sought or issued a criminal trespass warning against her. While defendant O'Neill told Yates that a criminal trespass warrant prohibited her from coming to the high school, defendant O'Neill was not a final policymaker for the CCSD given that he was not authorized to ask for or issue a criminal trespass warning. See Doe, 604 F.3d at 1263-64 ("Municipal liability from a single action or decision may only be deemed representative of the municipality if the acting official is imbued with final policymaking authority.") (quotation marks and alterations omitted). Furthermore, Yates did not present any evidence that defendant O'Neill's conduct was part of a widespread pattern within the school district. See Craig, 643 F.3d at 1310-11.

Based on the summary judgment record, the most that can be said is that O'Neill was misinformed and relayed that misinformation to Yates. The CCSD cannot be held liable for O'Neill's actions under a theory of respondeat superior, and evidence of a single incident of misinformation by O'Neill does not show a policy or custom of the CCSD, much less one that was a "moving force" behind any alleged deprivation of Yates's constitutional rights. See Monell, 436 U.S. at 690-94, 98 S. Ct. at 2035-38.

In the district court Yates argued that the CCSD did not properly train O'Neill, which resulted in her rights being restricted. A plaintiff may prove the

"custom or policy" prong of a <u>Monell</u> claim by showing that the municipal entity "knew of a need to train and/or supervise in a particular area and . . . made a deliberate choice not to take any action." <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998). To succeed on a failure-to-train theory, however, the plaintiff must present evidence that the need for training was obvious. <u>Id.</u> at 1351-52. On appeal, Yates does not challenge the district court ruling that Yates did not present evidence to support her failure-to-train argument. In any event, given that Yates did not present evidence of any prior incidents of school officials misinforming parents of criminal trespass warnings, Yates did not show a training need that should have been obvious to the CCSD.

### III. CONCLUSION

For all these reasons, the district court did not err in granting summary judgment in favor of the defendants on Yates's federal claims.

**AFFIRMED.**

18