[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16103
_____

D.C. Docket No. 5:15-cv-00006-MTT


DEMETRICE MARTIN,

Plaintiff - Appellant,

versus

CITY OF MACON GEORGIA,
OVERLOOK GARDENS PROPERTIES LLC,
THE WOODRUFF COMPANIES,
JUSTIN FOX,
in his individual and official capacity as a Macon Police Officer
and as a Courtesy Officer for Overlook Garden Apartment Complex,
WOODRUFF PROPERTY MANAGEMENT COMPANY,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 5, 2017)

Before JULIE CARNES and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

Plaintiff Demetrice Martin ("Plaintiff") sued Defendant Macon-Bibb County ("Defendant") under 42 U.S.C. § 1983 over the allegedly unconstitutional behavior of a Macon Police Department officer. The officer handcuffed Plaintiff's eight-year-old son while investigating a complaint from the officer's girlfriend that the child had thrown something at the couple's dog. The district court granted Defendant's motion for summary judgment, finding no evidence of a policy, custom, or practice that supported or caused the officer's actions. Upon review, and with the benefit of oral argument, we affirm.

## I. INTRODUCTION

### A. Factual Background

While employed as a police officer by the Macon Police Department, Justin Fox also worked for Woodruff Property Management Company ("Woodruff") as an "Independent Contractor Courtesy Officer" at Overlook Gardens Apartments, formally Overlook Gardens Properties, LLC ("Overlook"), where Fox lived with his girlfriend. Fox's duties required him to patrol the apartment complex, to keep a log documenting any breaches of the law, and to "immediately contact the proper local authorities when confronted with any situation involving a breach of the local

---

[*] The Honorable Ricard W. Goldberg, of the United States Court of International Trade, sitting by designation

2

law."  At no time did Overlook or Woodruff instruct Fox to make any arrests as part of his duties.

On the day of the incident, Fox was engaged in police-related activities when he received a text message from his girlfriend informing him that a boy had thrown something at Fox's dog.  Though not dispatched by the police department to respond to the incident, Fox drove to Overlook, in uniform, and began searching for the child his girlfriend described.  Fox found a boy who identified his eight-year-old brother, E.M., as the child Fox was looking for, and the boy took Fox to the apartment where the two boys resided with Plaintiff, their mother.

Fox entered the apartment, placed E.M. in handcuffs, and informed Plaintiff and E.M. that E.M. could be charged with animal cruelty.  Plaintiff testified that E.M. eventually admitted to throwing pine straw at the dog to get its attention, and that E.M. apologized after he began to cry.  Fox removed the handcuffs and said that this should be a lesson to E.M. that he could get into trouble for throwing things at dogs.  Fox did not report this incident to anybody at Overlook or Woodruff.

After learning of the incident, the Macon Police Department removed Fox from patrol duty and began an Internal Affairs investigation.  According to Henderson Carswell, the deputy police chief at the time, Fox violated policies, including a strict prohibition on using handcuffs "merely to frighten or impress"

3

and a direction that handcuff use should be restricted to juveniles who are capable of resisting arrest, who are attempting to escape, or who pose a threat to the safety of themselves or others.  After the investigation, the Disciplinary Review Board unanimously recommended Fox's termination, and Fox resigned after receiving notice of his pending termination.

### B.  Procedural History

Plaintiff sued Defendant[1] and Fox under 42 U.S.C. § 1983 for various federal and state claims.  Plaintiff also sued Woodruff and Overlook for various state laws claims.  Defendant, Woodruff, and Overlook moved for summary judgment, which the district court granted.  Plaintiff voluntarily dismissed her suit against Fox on August 15, 2016, and judgment was entered in favor of Defendant, Overlook, and Woodruff four days later.  Plaintiff timely appealed.

On appeal, Plaintiff only addresses her claim against Defendant, and so appears to have abandoned her claims against Woodruff and Overlook.  We accordingly affirm the district court's grant of summary judgment in favor of Woodruff and Overlook, and turn to the only remaining issue in this case:  whether Fox's actions create liability for Defendant.

---

[1]  Plaintiff's complaint initially named the City of Macon as Defendant in this suit, but the City of Macon and Bibb County have consolidated, and so Macon-Bibb County is the proper Defendant here.

## II.  DISCUSSION

### A.  Standard of Review

We review *de novo* a district court's grant of summary judgment, viewing all evidence in the light most favorable to the non-moving party.  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  A movant is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.  Plaintiff's *Monell* Claim

As the parties do not dispute the issue, we assume without deciding, as did the district court, that Fox's actions were unconstitutional.  Nevertheless, we agree with the district court that Fox's actions do not create liability for Defendant.

A municipality can be liable under § 1983 for the unconstitutional actions of its employees only when the county's "official policy" causes a constitutional violation.  *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Without an officially promulgated policy, a plaintiff can also establish liability by pointing to "an unofficial custom or practice of the county shown through the repeated acts of a

final policymaker for the county." *Id.* at 1329.  This requires showing not only the existence of such a custom or practice, but that the custom or practice is the "moving force behind the constitutional violation." *Id.* at 1330 (internal quotation marks omitted).  When a plaintiff alleges that a municipality has failed to train or supervise its employees, this showing usually requires "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."[2] *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

A single instance of unconstitutional conduct can create *Monell* liability only when "proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Schmelz v. Monroe Cty.*, 954 F.2d 1540, 1544 (11th Cir. 1992) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).  Thus a single instance of unconstitutional behavior cannot establish proof of the policy itself. *See Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("A single incident would not be so pervasive as to be a custom . . . because a custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop

---

[2] "In a narrow range of circumstances," a plaintiff may not need to show evidence of knowledge of prior incidents when "the need to train and supervise in the particular areas in issue [is] so obvious and the likelihood of constitutional violations [is] highly predictable." *Gold*, 151 F.3d at 1351–52.  We agree with the district court that this exception does not apply to this case.

it." (internal citations and quotation marks omitted)); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."); *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city.").

Here, Defendant had no official policy calling for an officer to behave as Fox did.  To the contrary, it is undisputed that Fox acted against Defendant's official policy when he used handcuffs on E.M. under the circumstances.  This means that Plaintiff must prove the existence of a custom or policy that caused the constitutional violation.  Plaintiff alleges that the police department's failure to properly train, supervise, and retain its officers is a custom and practice that was the moving force behind Fox's actions.  The only evidence Plaintiff offers to support this claim is testimony from Fox, which Plaintiff claims provides evidence that Fox was trained to place handcuffs on people before conducting an investigation.  Fox's testimony is insufficient to support Plaintiff's argument, however.

In his deposition testimony, Fox was asked, "when you do an investigation, you just put handcuffs on people while you're doing an investigation?"  He replied,

"Sometimes, yes," and proceeded to explain that sometimes officer safety required it. During cross-examination, Fox responded "Yes" to a question asking whether it was his testimony that "training taught [him] to place people in handcuffs while [he] conducted an investigation." Plaintiff asserts that the latter exchange is evidence of negligent training—or at least conflicting testimony—and sufficient to avoid summary judgment. Yet this testimony does not provide evidence that Fox was trained to always handcuff before investigating, or even to use handcuffs in the circumstances that he did. Nor are these statements inherently contradictory such that they create a disputed issue of fact that a jury needs to resolve.

Similarly, Plaintiff argues that Fox's comments during the Internal Affairs investigation raise a question of fact as to Defendant's training and policies. When asked why he was detaining E.M. when his mother was standing right there, Fox stated, "that's the way I was taught. I mean from [field training] when a juvenile [is] involved we just placed them in handcuffs and then we talk to the parents." While Plaintiff argues that this statement is evidence of Defendant's failure to train, it is clear that Fox is referring to training on using handcuffs in the presence of the juvenile's parent—as the statement was made in response to a question to that effect—rather than handcuffing juveniles as a matter of course. Fox later stated that he was aware of department policy that juveniles can be placed in handcuffs when it is "justifiable and reasonable" and that a parent or guardian must

8

be present during questioning.  Fox also stated several times in the same interview that he used handcuffs because he intended to arrest E.M. or otherwise press charges for animal cruelty.  When asked why he did not first ascertain E.M.'s age before using handcuffs,[3] Fox said he "just didn't think about it"—not that his training said it did not matter.  While Fox's statements certainly suggest his poor judgment in the situation, they do not provide evidence that Fox's actions were caused by Defendant's allegedly negligent training and supervision.

Not only does the evidence offered by Plaintiff fail to support her claim, she offers no evidence of other similar incidents, which is necessary for her claim to succeed.  Standing alone, the fact that Fox acted unconstitutionally cannot provide evidence that Defendant had a custom or practice that condoned negligent training or supervision.  *See City of Canton*, 489 U.S. at 390–91; *Craig*, 643 F.3d at 1310.  Additionally, without evidence of any other incidents aside from Fox's, Plaintiff cannot show that Defendant knew that its training and supervision were inadequate.  *See Gold*, 151 F.3d at 1350.  In short, Plaintiff has not shown that any policy of Defendant's—official or otherwise—was the "moving force" behind Fox's actions.  *Grech*, 335 F.3d at 1330.  Defendant therefore cannot be liable to Plaintiff under a *Monell* theory.

---

[3]  Fox acknowledges that an eight-year-old cannot be charged with a crime in Georgia.

9

## III.  CONCLUSION

Plaintiff has provided no evidence sufficient to establish Defendant's

liability under *Monell*, and so the district court's grant of summary judgment is

**AFFIRMED**.