[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11622-C

_____

ANTHONY SWAIN, *et al.*

Plaintiffs - Appellees,

versus

DANIEL JUNIOR, in his official capacity as Director
of the Miami-Dade Corrections and Rehabilitation Department, and
MIAMI-DADE COUNTY, FLORIDA

Defendants - Appellants.

_____

On Appeal from the United States
District Court for the Southern District of Florida

_____

Before: WILSON, WILLIAM PRYOR and BRANCH, Circuit Judges.

BY THE COURT:

No part of our country has escaped the effects of COVID-19.   It is thus not

surprising that several inmates at the Metro West Detention Center ("Metro

1

West")—the largest direct-supervision jail facility in the State of Florida—have tested positive for the virus.   This appeal concerns the adequacy of the measures implemented by Metro West to protect its prisoners from the spread of COVID-19.

On April 5, 2020, seven Metro West inmates filed a class action complaint challenging the conditions of the inmates' confinement under 42 U.S.C. § 1983 and seeking habeas relief under 28 U.S.C. § 2241 for the named plaintiffs along with a "medically vulnerable" subclass of inmates.

At issue in this motion for a stay pending appeal is the preliminary injunction issued by the United States District Court for the Southern District of Florida on April 29, 2020, against defendants Miami-Dade County and Daniel Junior, the Director of the Miami-Dade Corrections and Rehabilitations Department ("MDCR").   The injunction requires the defendants to employ numerous safety measures to prevent the spread of COVID-19 and imposes extensive reporting requirements.   Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, we stay the injunction pending appeal and expedite the appeal.

## I.

MDCR, a department of Miami-Dade County, operates Metro West.   When the first case of COVID-19 in Miami-Dade County was reported in early March

2

2020, MDCR began enacting measures to protect inmates. Those measures included cancelling inmate visitation; screening arrestees, inmates, and staff; and advising staff of use of protective equipment and sanitation practices. On March 23, 2020, the U.S. Centers for Disease Control and Prevention ("CDC") issued the *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correction and Detention Facilities*, (the "CDC Guidance"). MDCR reviewed the CDC Guidance and updated its practices. As the situation developed, MDCR continued to implement additional safety measures, including daily temperature screenings of all persons entering Metro West, establishing a "COVID-19 Incident Command Center and Response Line" to track testing and identify close contacts with the virus, developing a social hygiene campaign, and mandating that staff and inmates wear protective masks at all times. MDCR also implemented social distancing efforts, including staggering the dormitory bunks, requiring inmates to sleep head-to-toe to ensure further distancing, and instructing staff to encourage social distancing between inmates. The district court accepted as true that the defendants implemented these measures for purposes of issuing the preliminary injunction and did not resolve any factual disputes in favor of the plaintiffs.

On April 5, 2020, the plaintiffs filed a class action complaint on behalf of "all current and future persons detained at Metro West during the course of the

3

COVID-19 pandemic."   Among other deficiencies, the class action complaint alleged that the inmates at Metro West did not have enough soap or towels to wash their hands properly, waited days for medical attention, were "denied basic hygienic supplies" like laundry detergent and cleaning materials, and were forced to sleep only two feet apart.   They sought declaratory and injunctive relief for violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 on behalf of the entire class and immediate release from custody pursuant to 28 U.S.C. § 2241 on behalf of the named plaintiffs and the medically vulnerable subclass.

The district court entered a temporary restraining order ("TRO") against the defendants on April 7, two days after the complaint was filed.   Consistent with the TRO, the defendants screened all new arrestees and staff as they entered the facilities, enhanced cleaning and sanitation measures, made efforts to increase social distancing, issued masks to all staff and inmates, supplied paper towels in the restrooms, and quarantined inmates showing COVID-19 symptoms.

On April 29, following a telephonic evidentiary hearing, the district court entered a preliminary injunction against the defendants on the plaintiffs' § 1983

4

claim.[1]    The preliminary injunction enjoins the defendants to:

- "Effectively communicate to all people incarcerated at [Metro West], including low-literacy and non-English speaking people, sufficient information about COVID-19, measures taken to reduce the risk of transmission, and any changes in policies or practices to reasonably ensure that individuals are able to take precautions to prevent infection";

- "To the maximum extent possible considering [Metro West's] current population level, provide and enforce adequate spacing of six feet or more between people incarcerated at Metro West so that social distancing can be accomplished";

- "Ensure that each incarcerated person receives, free of charge (1) an individual supply of soap, preferably liquid as recommended by the CDC, sufficient to allow frequent hand washing each day; (2) hand drying machines, or disposable paper towels as recommended by the CDC, and individual towels, sufficient for daily use; (3) an adequate supply of disinfectant products effective against the virus that causes COVID-19 for daily cleanings; and (4) an adequate supply of toilet paper sufficient for daily use";

- "Provide reasonable access to showers and to clean laundry";

- "Require that all MCDR staff wear personal protective equipment, including masks, and gloves when physically interacting with any person, and require that, absent extraordinary or unusual circumstances, a new pair of gloves is worn each time MDCR staff touch a different person; and require all inmate workers who are cleaning facilities or preparing food to follow this same protocol";

---

[1] The district court did not make a finding as to whether the defendants had complied with the TRO.   We do note, however, that a report commissioned by the district court and prepared by experts for each party following a review of the facility and of the TRO appears to indicate that the defendants were in compliance with the TRO.

   The district court also denied the plaintiffs' requested habeas relief under § 2241 without prejudice.

5

- "Require that all MDCR staff regularly wash their hands with soap and water or use hand sanitizer containing at least 60% alcohol";

- "Ensure access to proper testing for anyone displaying known symptoms of COVID-19 in accordance with CDC guidelines and for anyone who has come in contact with an individual who has tested positive for COVID-19";

- "Ensure that individuals identified as having COVID-19 or having been exposed to COVID-19 receive adequate medical care and are properly quarantined, with continued access to showers, mental health services, phone calls with family, and communications with counsel; individuals identified as having COVID-19 or having been exposed to COVID-19 shall not be placed in cells normally used for disciplinary confinement absent emergency circumstances";

- "Respond to all emergency (as defined by the medical community) requests for medical attention as soon as possible";

- "Provide sufficient disinfecting supplies consistent with CDC recommendations in each housing unit, free of charge, so incarcerated people can clean high-touch areas or any other items in the unit between each use";

- "Waive all medical co-pays for those experiencing COVID-19-related symptoms";

- "Waive all charges for medical grievances during this health crisis"; and

- "Provide face masks for inmates at Metro West. The face masks must be replaced at medically appropriate intervals, and Defendants must provide inmates with instruction on how to use a face mask and the reasons for its use."

The district court observed that the CDC's Guidance "formed the basis" of these requirements.   In order to ensure compliance, it further ordered the defendants to:

6

- "Continue providing the Court with updated information regarding the number of staff and inmates who have tested positive for, or are being quarantined because of, COVID-19.   These notices shall be filed every three days for the duration of [the order]; Defendants shall also continue to provide this information to their state criminal justice partners";

- "Provide the [district court] with weekly reports containing the current population data for Metro West"; and

- "Submit, within 7 days of [the order], a proposal outlining steps Defendants will undertake to ensure additional social distancing safeguards in terms of housing inmates and inmate activity (medical visits, telephones, etc.)."

## II.

"In considering whether to stay a preliminary injunction . . . we examine the district court's grant of the preliminary injunction for abuse of discretion, reviewing *de novo* any underlying legal conclusions and for clear error any findings of fact."   *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019).

## III.

A court considering whether to issue a stay "considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"   *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776

7

(1987)).   The first two factors are "the most critical."   *Id.* at 434.   We address

each factor in turn and conclude that a stay is warranted.

### A. Likelihood of Success on Appeal

In their § 1983 claim, the plaintiffs allege that the defendants violated the

Eighth and Fourteenth Amendments through their deliberate indifference to the

risk that COVID-19 poses to the plaintiffs.   The defendants ask us to stay the

injunction pending appeal because they contend that the plaintiffs failed to

establish that they were entitled to a preliminary injunction.   To obtain a

preliminary injunction, the plaintiffs were required to establish that (1) "a

substantial likelihood of success on the merits" exists; (2) they would suffer

irreparable harm absent an injunction; (3) "the threatened injury to the[m] . . .

outweighs" any harm the injunction might cause the defendants; and (4) if issued,

the injunction would not be adverse to the public interest.   *Wreal, LLC v.*

*Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotation marks

omitted).

The Eighth Amendment to the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and

unusual punishments inflicted."   "The 'cruel and unusual punishments' standard

applies to the conditions of a prisoner's confinement."   *Chandler v. Crosby*, 379

8

F.3d 1278, 1288 (11th Cir. 2004); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (explaining that a pre-trial detainee's "rights exist under the due process clause of the Fourteenth Amendment" but "are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment").   An Eighth Amendment challenge to the conditions of confinement has two components: one objective and the other subjective.   *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

First, to satisfy the "objective component," the prisoner must show "an objectively intolerable risk of harm."   *Id.*   He must show that the challenged conditions were "extreme" and presented an "'unreasonable risk of serious damage to his future health' or safety."   *Chandler*, 379 F.3d at 1289 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).   The defendants do not contest for purposes of this motion that the plaintiffs can satisfy this component.

Second, to satisfy the "subjective component," the prisoner must show that the prison official acted with deliberate indifference.   *Id.*   A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety."   *Farmer*, 511 U.S. at 837; *see also Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).   A prison "official may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately

9

was not averted.'" *Chandler*, 379 F.3d at 1290 (quoting *Farmer*, 511 U.S. at 844). Deliberate indifference requires the defendant to have a subjective "state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, closer to criminal recklessness, *id.* at 839–40.

The defendants are likely to prevail on appeal because the district court likely committed errors of law in granting the preliminary injunction. In conducting its deliberate indifference inquiry, the district court incorrectly collapsed the subjective and objective components. The district court treated the increase in COVID-19 infections as proof that the defendants deliberately disregarded an intolerable risk. In doing so, it likely violated the admonition that resultant harm does not establish a liable state of mind. *See Farmer*, 511 U.S. at 844. The district also likely erred by treating Metro West's inability to "achieve meaningful social distancing" as evincing a reckless state of mind. Although the district court acknowledged that social distancing was "impossible" and "cannot be achieved absent an additional reduction in Metro West's population or some other measure to achieve meaningful social distancing," it concluded that this failure made it likely that the plaintiffs would establish the subjective component of their claim. But the inability to take a positive action likely does not constitute "a state of mind more blameworthy than negligence." *Id.* at 835.

10

The defendants are also likely to succeed on appeal because the plaintiffs offered little evidence to suggest that the defendants were deliberately indifferent. Indeed, the evidence supports that the defendants are taking the risk of COVID-19 seriously.   For example, the expert report commissioned by the district court concluded that the staff at Metro West "should be commended for their commitment to protect the staff and inmates in this facility during this COVID-19 pandemic.   They are doing their best balancing social distancing and regulation applicable to the facility."   According to the expert report, Metro West appears to have implemented many measures to curb the spread of the virus.   While perhaps impossible for the defendants to implement social distancing measures effectively in all situations at Metro West's current population level, the district court cited no evidence to establish that the defendants subjectively believed the measures they were taking were inadequate.   *See Valentine v. Collier*, No. No. 20-20207, 2020 WL 1934431, at \*4 (5th Cir. Apr. 27, 2020) ("[T]reating inadequate measures as dispositive of the Defendants' mental state . . . resembles the standard for civil negligence, which *Farmer* explicitly rejected.").

The only other evidence the district court relied on to establish deliberate indifference is that Metro West's social-distancing policies are "not uniformly enforced."   But the district court made no finding that the defendants are ignoring

11

or approving the alleged lapses in enforcement of social-distancing policies, so these lapses in enforcement do little to establish that the defendants were deliberately indifferent. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995) (requiring plaintiffs establish a causal connection between the defendant's conduct and the constitutional violation to prevail on a deliberate-indifference claim). Accepting, as the district court did, that the defendants adopted extensive safety measures such as increasing screening, providing protective equipment, adopting social distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures, the defendants' actions likely do not amount to deliberate indifference. So the district court likely erred in this regard.

## B. Irreparable Injury

The defendants have also shown that they will be irreparably injured absent a stay. *See Nken*, 556 U.S. at 434. Absent a stay, the defendants will lose the discretion vested in them under state law to allocate scarce resources among different county operations necessary to fight the pandemic. Through its injunction, the district court has taken charge of many administrative decisions typically left to MDCR officials. For example, the injunction requires that the defendants provide each Metro West inmate with an individual supply of soap and

12

disinfectant products.   Under pain of contempt, therefore, MDCR must divert these high-demand supplies to Metro West, even though they may be more critical at another county facility.   Similarly, the injunction requires that the defendants test all inmates with COVID-19 symptoms and everyone with whom they have been in contact.   To avoid contempt, then, MDCR must allocate limited testing resources to Metro West at the expense of other county facilities.   All the while, the district court has tasked itself with overseeing the steps the defendants are taking to "ensure additional social distancing safeguards," even though it acknowledges that social distancing is "impossible" at the current inmate population level.   In short, the district court assumed the role of "super-warden" that our decisions repeatedly condemn.   *See Pesci v. Budz*, 935 F.3d 1159, 1167 (11th Cir. 2019); *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 965 (11th Cir. 2018).

As the Supreme Court has cautioned, "it is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" *Woodford v. Ngo*, 548 U.S. 81, 94 (2006).   In large measure, the injunction transfers the power to administer the Metro West facility in the midst of the pandemic from public officials to the district court.   The injunction hamstrings

13

MDCR officials with years of experience running correctional facilities, and the elected officials they report to, from acting with dispatch to respond to this unprecedented pandemic.   They cannot respond to the rapidly evolving circumstances on the ground without first seeking "a permission slip from the district court." *Valentine*, 2020 WL 1934431, at *5.   Such a prohibition amounts to an irreparable harm.

### C. Balance of Harms and Public Interest

The final two factors are the balance of harms and the public interest.   *See Nken*, 556 U.S. at 426.   Here, both those factors weigh in favor of a stay.   The district court found that because the inmates "face immediate, irreparable harm from COVID-19," their risk of harm outweighs the harm imposed on the defendants from complying with the preliminary injunction.   But the question is not whether COVID-19 presents a danger to the inmates—we do not dismiss the risk of harm that COVID-19 poses to everyone, including the inmates at Metro West.   The question is instead whether the plaintiffs have shown that they will suffer irreparable injuries that they would not otherwise suffer in the absence of an injunction.   *See id.*; *cf. Valentine*, 2020 WL 1934431, at *5.   Nothing in the record indicates that the defendants will abandon the current safety measures absent a preliminary injunction, especially since the defendants implemented many

14

of those measures before the plaintiffs even filed the complaint. Nor do the plaintiffs contend that they will abandon those measures. For that reason, the balance of harms weighs in the defendants' favor.

Finally, where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest. *Nken*, 556 U.S. at 435. We therefore conclude that the defendants have satisfied all four requirements for a stay.

IV.

Before concluding, we address two other probable errors in the district court's order that make the defendants likely to succeed on appeal: its refusal to address whether the plaintiffs established that the county and defendant Junior were likely liable under *Monell* and its refusal to address the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). Both inquiries are necessary components of the likelihood of success inquiry a court must undertake in order to issue a preliminary injunction in the first instance. *See Wreal*, 840 F.3d at 1247.

First, the district court likely erred in holding that the plaintiffs are not required to establish municipal liability under *Monell* at the preliminary injunction stage. A municipality may not be held liable under § 1983 unless a municipal

15

policy or custom caused the plaintiffs' injury.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).   The policy or custom requirement of *Monell* applies to § 1983 claims for declaratory or injunctive relief no less than claims for damages.  *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 31 (2010).  Because a district court cannot award prospective relief against a municipality unless the requirements of *Monell* are satisfied, *id.*, plaintiffs must establish that they are likely to satisfy the requirements of *Monell* to obtain a preliminary injunction against a municipality.  *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

Contrary to *Church*, the district court ruled that the plaintiffs did not need to establish a likelihood of success under *Monell* to obtain a preliminary injunction, and it did not address whether they were likely to satisfy *Monell*.   For that reason, Miami-Dade County is likely to succeed in arguing on appeal that the district court erred by enjoining it.   And because the plaintiffs sued defendant Junior only in his official capacity, which "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690), they must also satisfy the requirements of *Monell* to obtain injunctive relief against him to the extent they challenge his conduct as an officer of Miami-Dade County.  *See Barnett v.*

16

*MacArthur*, No. 18-12238, 2020 WL 1870445, at *3 (11th Cir. Apr. 15, 2020);

*Familias Unidas v. Briscoe*, 619 F.2d 391, 403–04 (5th Cir. 1980).   The district

court did not address whether the plaintiffs were likely to satisfy *Monell* as to

defendant Junior, so he is also likely to succeed in having the injunction against

him vacated on appeal.

Second, the district court also likely erred in declining to address PLRA

exhaustion at the preliminary injunction stage.   In no uncertain terms, the PLRA

provides: "No action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."   42 U.S.C. § 1997e(a).   So long as those remedies are

"available" to the prisoner, a "court may not excuse a failure to exhaust, even to

take [special] circumstances into account."   *Ross v. Blake*, 136 S. Ct. 1850, 1856

(2016).   But the district declined to address exhaustion because failure to exhaust

is an affirmative defense, and therefore, according to the district court, is

inapplicable at the preliminary injunction stage.   That decision was misguided.

Just because failure to exhaust is an affirmative defense and not a pleading

requirement, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), does not render

exhaustion irrelevant to determining whether the plaintiffs are entitled to a

17

preliminary injunction.  "[T]he burdens at the preliminary injunction stage track the burdens at trial."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).  Failure to exhaust is an affirmative defense, so the defendants bear the burden of proving it.  *See Jones v. Bock*, 549 U.S. at 216.  Because the defendants correctly raised and briefed the defense in a motion to dismiss and in their opposition to the plaintiffs' motion for a preliminary injunction, the district court was obliged to decide whether the defendants were likely to establish the defense.  *See Gonzales*, 546 U.S. at 428; *Chandler*, 379 F.3d at 1286 (explaining that exhaustion under the PLRA is "a threshold matter" that a court "must address" before reaching the merits).  Although the district court determined that the existence of the defense turned on disputed questions of fact, district courts are required to resolve factual disputes regarding PLRA exhaustion—a "preliminary issue"—at the outset of a case.  *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  The district court could not determine that the plaintiffs were likely to succeed on their § 1983 claim without, at the very least, finding that the defendants were unlikely to carry their burden of establishing failure to exhaust.  *See Gonzales*, 546 U.S. at 428–29.  Because it failed to do so, the defendants are likely to succeed on appeal.

18

V.

In conclusion, the defendants' motion for a stay pending appeal and motion to expedite the appeal are **GRANTED**.   The plaintiffs' "Opposed Motion for Oral Argument on Appellants' Emergency Motion to Stay Injunction Pending Appeal" is **DENIED**.

The Court **DIRECTS** the Clerk to expedite the appeal for merits disposition purposes and to schedule it for oral argument before the earliest available panel.

The Court sets the following briefing schedule: the initial brief is due on May 18, 2020, the response brief is due on May 28, 2020, and the reply brief is due on June 1, 2020.   No motions for extensions of time will be considered.

19

WILSON, Circuit Judge, dissenting from the order granting the stay:

To persuade us to grant a stay, the County bore the burden of making "a strong showing" that it is likely to succeed on the merits—a "most critical" factor. *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). It failed to do so. I see no strong showing of error as to the district court's factual findings or legal conclusions about (1) meaningful social distancing and population reduction or other measures to achieve it, or (2) officials' knowledge and the reasonableness of their response. *See Brown v. Plata*, 563 U.S. 493, 521, 526–30 (2011) (analyzing the necessity of reducing overcrowding after other failed remedial measures in the Eighth Amendment context); *Helling v. McKinney*, 509 U.S. 25, 36–37 (1993) (describing focus on both society's and prison authorities' current attitudes and conduct). And I otherwise fail to see an abuse of discretion here. Therefore, I dissent from the order granting the stay.

20