[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14761

_____

LARRY ROY,

Plaintiff-Appellant,

*versus*

KAY IVY,
JEFFERSON DUNN,
WEXFORD MEDICAL SERVICES,

Defendants-Appellees,

RUTH NAGLICH,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:18-cv-00459-CG-MU

_____

Before LUCK, BRASHER, and HULL, Circuit Judges.

HULL, Circuit Judge:

Larry Roy, an Alabama prisoner, brought this 42 U.S.C. § 1983 action alleging long delays in his receipt of treatment for hernias and for post-surgery complications. In his *pro se* third amended complaint, Roy asserted claims for deliberate indifference to his serious medical needs against: (1) Wexford Health Sources, Inc. ("Wexford"),[1] a private contractor that provides health care services for Alabama inmates; (2) Kay Ivey,[2] the Governor of Alabama; and (3) Jefferson Dunn, the Commissioner of the Alabama Department of Corrections.

In response to Wexford's summary judgment motion, Roy submitted statements signed by himself and seven other inmates. Although most of the statements were labeled as affidavits, only

_____

[1] Wexford's name is listed as "Wexford Medical Services" in the case heading because its name was misstated in the initial complaint.

[2] Governor Ivey's name is listed as "Ivy" in the case heading because her name was misspelled in the initial complaint.

inmate John Dejnozka indicated his statement was "true and correct" and was made "under penalty of perjury."

The district court (1) granted summary judgment in favor of Wexford and (2) dismissed Roy's complaint against Governor Ivey and Commissioner Dunn for failure to state a claim.

After review and with the benefit of oral argument, we conclude that only inmate Dejnozka's statement satisfies the requirements of 28 U.S.C. § 1746 and only that statement can be considered at the summary judgment stage. Upon considering that inmate statement, Roy's verified complaint, and the record as a whole, we conclude that the district court did not err in entering judgment for the defendants.

## I.      BACKGROUND

### A.    Third Amended Complaint

In his verified third amended complaint, Roy asserted claims for deliberate indifference to his serious medical needs, in violation of his constitutional rights, against (1) Wexford, (2) Governor Ivey, and (3) Commissioner Dunn.

Roy contended that Wexford had a policy, custom, and pattern of delaying medical treatment following a doctor's diagnosis. Roy alleged that he was diagnosed with a hernia in 2014, but because of a five-year delay in Wexford's treatment of his initial hernia, his condition worsened. A physician at Roy's prison examined Roy several times but elected to focus on treating Roy's failing prostate.

In July 2018, a urologist examined a "large lump" on Roy's prostate surgery scar and diagnosed Roy with a second hernia. The "large lump" later was diagnosed as a foreign object.

Roy eventually underwent surgeries to repair both hernias and to remove the foreign object. Roy continued to suffer "severe pain" as a result of those surgeries. Roy asserted that the long delays between diagnosis and treatment "disrupted the healing of both hernias."

Roy also alleged that: (1) Governor Ivey, based on records in her possession, knew or should have known that Wexford had a pattern or practice of delaying treatment, putting inmates at risk of more serious harm; and (2) an associate of Commissioner Dunn had set a policy, custom, or practice that put Roy at greater risk of harm by causing delays in his treatment and depriving him of adequate medical care.

At the end of his third amended complaint, Roy signed this affirmation: "By my signature below, I swear or affirm under penalty of perjury that the facts set out in this complaint are true and correct." The complaint also contained a handwritten "Notary" section, which read: "Before me, Plaintiff Roy asserts under penalty of perjury that the statements made herein [sic] this § 1983 civil action are true and correct to the best of his recollection." Both Roy and a notary signed underneath this statement.

B.     **Wexford's Motion for Summary Judgment**

Defendant Wexford answered and submitted a "special report," in which it argued that it was entitled to judgment as a matter of law.  Wexford acknowledged that it was the functional equivalent of a municipality because it performed a traditional state function.   Wexford, however, contended that Roy had not presented evidence to show that it had a policy or custom that contributed to the alleged delay or denial of his medical treatment.

A magistrate judge converted Wexford's answer and special report to a motion for summary judgment.  The magistrate judge gave the parties notice that they could file evidence in support of, or in opposition to, the motion for summary judgment.  The magistrate judge explained that this evidence could include "declarations (written statements of fact signed under penalty of perjury under 28 U.S.C. § 1746)."   The magistrate judge also explained that summary judgment, if granted, would be a final adjudication of this action.

C.     **Governor Ivey and Commissioner Dunn's Motion to Dismiss**

Defendants Governor Ivey and Commissioner Dunn moved to dismiss Roy's complaint for failure to state a claim.  They argued Roy had not alleged: (1) that either of them had personal involvement in his medical treatment; or (2) that a causal connection existed between any specific policy that they had implemented and his medical care.

### D.    Roy's Brief in Response

In June 2020, Roy filed a 61-page "Brief in Response to Defendant's Claim to Summary Judgment" (the "brief"). Roy's brief had a table of contents and included these documents as exhibits: (1) his inmate request slips, sick call requests, and grievances, which detailed his efforts to receive treatment for various medical conditions; (2) responses from prison officials; (3) his daily medical reports; and (4) a news article about a Department of Justice report on unconstitutional conditions in Alabama prisons.

Roy's brief also included separate, signed statements from Roy himself and seven other inmates. All of the inmate statements were labeled "affidavits," except for the statements of Nevis Jennings, Jr. and Edward Pringle. For consistency, we refer to all of them as statements. All of the statements were unsworn.

However, the statement that Roy obtained from inmate Dejnozka indicated at the beginning that Dejnozka "testifie[d] and assert[ed] under penalty of perjury, that his stated facts and statements [we]re true and correct to the best of his recollection." Dejnozka dated and signed his statement. As explained later, Dejnozka's unsworn statement complies with § 1746 and may substitute for a sworn affidavit at the summary judgment stage.

By contrast, in his own statement, Roy did not certify that the content of his statement was true or correct or made under penalty of perjury. Similarly, the texts of the other attached inmate

statements contained no language confirming their statements were true or correct or made under penalty of perjury.

At most, inmate Kevin Manning asserted in his statement that he was "submit[ting] the following testimony." Manning styled his inmate statement as a court pleading by (1) listing the district court at the top of the document and (2) including the terms "v." and "Civil Action No."

Inmate Carl Salter's statement indicated in the last paragraph that it was "[d]one in good faith, with a justified concern for Roy." Inmate William Mason's statement was signed, but not dated.

We do recognize that Roy's brief contained the "penalty of perjury" language in two places. First, Roy's table of contents had an entry that reads:

2. AFFIDAVITS/DEPOSITIONS - under penalty of perjury.                                                    (pages 4-19)

Second, the fifth page of Roy's brief contained a heading[3] titled as follows:

---

[3] Although neither party's brief addresses this heading, we consider it because it contains "penalty of perjury" language that is similar to the language appearing in the table of contents of Roy's brief.

AFFIDAVITS/DEPOSITIONS – under penalty of perjury testifying concerning having personal knowledge of facts in case:

Under that heading, Roy listed the names of all eight inmates who gave statements, including his own name, followed by a dash (for example, "Larry Roy-"). Nonetheless, neither Roy nor any of the inmates signed either of those two pages from his brief.

Turning to the content of the inmate statements, we note that Roy's and Dejnozka's statements allege only facts concerning *Roy's own delays in receiving medical treatment.* While Roy's statement was consistent with the allegations in his verified third amended complaint, it contained more detail about his diagnoses and the amount of time that passed between a diagnosis and surgery.[4] In his statement, Roy contended that: (1) he had struggled to get minimal adequate treatment after being diagnosed with a hernia in 2014; (2) a nurse initially was unable to diagnose Roy's "large lump"; (3) in August 2018, a physician diagnosed the "large lump," which had burst, as an infection and "put Roy in for surgery"; (4) in September 2018, a surgeon diagnosed the "large lump" as a "foreign object"; and (5) in October 2018, Roy received exploratory surgery to remove the foreign object.

---

[4] Roy's statement also included more detail about his allegedly inadequate medical care that is not relevant to his claim that the defendants had a policy or custom of long delays between diagnosis and treatment.

In his own statement, Dejnozka wrote that: (1) he saw Roy continually seek treatment from medical staff for pain caused by a "large lump" on the right side of a surgical scar; and (2) he observed Roy's physical health deteriorate as a result of long delays between diagnosis and treatment.[5]

Because we later conclude that the district court properly declined to consider the six other inmate statements, we do not recount their contents.

### E.      Magistrate Judge's Report and Recommendation

The magistrate judge issued a report and recommendation ("R&R"), recommending that the district court grant Wexford's motion for summary judgment and Governor Ivey and Commissioner Dunn's motion to dismiss. As to Wexford, the magistrate judge observed that Roy had provided only one sworn statement and determined that Roy had provided an account of

---

[5] In his statement, Dejnozka also asserted that a nurse practitioner at the prison had told Roy that he was not in pain because he had walked to the prison's health care unit. Unlike the other facts alleged in his statement, Dejnozka did not indicate that he personally observed the nurse practitioner make this statement. The district court therefore could not consider it at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[S]tatements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment.").

only a single incident, which was insufficient to establish that Wexford had a policy or custom of constitutional violations.

As to Governor Ivey and Commissioner Dunn, the magistrate judge determined that: (1) Roy had not alleged, nor presented evidence, that these defendants were personally involved in his medical treatment; and (2) Roy had failed to establish either defendant's supervisory liability, as he had not shown a causal connection between these defendants and the harm that he suffered. The magistrate judge's report warned that if a party did not object to the R&R within fourteen days, that party would waive the right to challenge on appeal any unobjected-to factual and legal conclusions.

## F.    Roy's Objections

Roy filed timely objections to the R&R, contending that: (1) he had alleged multiple instances where Wexford's policy or custom exacerbated his medical issues; and (2) the inmate "[a]ffidavits" constituted evidence of a persistent or widespread policy. Roy, however, did not challenge the magistrate judge's recommendation that his claims against Governor Ivey and Commissioner Dunn be dismissed.

### G.    District Court Order and the Appeal

The district court adopted the R&R and granted the defendants' motions. Roy appealed.[6] Following briefing by the parties, we appointed appellate counsel for Roy. We separately address the summary judgment granted to Wexford and then the dismissal of defendants Governor Ivey and Commissioner Dunn.

## II.    WEXFORD

### A.    Standard of Review

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the non-moving party. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). A movant is entitled to summary judgment upon showing that there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We may affirm summary judgment on any ground supported by the record. *MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1331 (11th Cir. 2022).

Because Roy proceeded *pro se* in the district court, we liberally construe his pleadings. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). *Pro se* litigants,

---

[6] Although Roy's initial complaint asserted a deliberate indifference claim against Ruth Naglich, his third amended complaint did not raise any claims against Naglich, who is not a party to this appeal.

however, are required to conform to procedural rules. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

## B.    Deliberate Indifference

Roy's third amended complaint against Wexford contends that Wexford had a custom or policy of delaying medical treatment for inmates' serious medical needs and such deliberate indifference caused Roy's injury and pain. We discuss the legal principles applicable to deliberate indifference claims and then Roy's evidence.

To establish a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Delays in medical treatment "that [are] tantamount to unnecessary and wanton infliction of pain[] may constitute deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995) (quotation marks omitted).

A private entity, like Wexford, that contracts to provide medical services to inmates performs traditional state functions and, therefore, is treated as a municipality for purposes of § 1983 claims. *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). "[Section] 1983 does not provide for liability under a theory of *respondeat superior* . . . ." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A municipality, however, may be held liable

20-14761                Opinion of the Court                13

under § 1983 if its policy or custom causes the plaintiff's injury. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020).

In the absence of an official policy endorsing a constitutional violation, a plaintiff must show: (1) that the municipality had a custom or practice of permitting such a violation; and (2) that this custom or practice was the "moving force" behind the violation. *Craig*, 643 F.3d at 1310 (quotation marks omitted). Proof of a single incident of an unconstitutional activity is insufficient to show a custom, which must be such "a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* (alteration and quotation marks omitted).

## C.    Requirements for Unsworn Declarations under Section 1746

To show Wexford's policy or custom of delays, Roy submitted: (1) Roy's, Dejnozka's, and four other inmates' statements about Roy's own delays in receiving medical treatment and (2) statements from two other inmates (Jennings and Pringle) about their own delays in receiving medical treatment. Although some statements were labeled "affidavits," the statements Roy submitted were all unsworn statements. As explained below, all of the unsworn statements, except for Dejnozka's, did not comply with the requirements of 28 U.S.C. § 1746, and thus those unsworn statements could not be considered by the district court.

At the summary judgment stage, parties may submit traditional affidavits sworn under oath before a notary (or another

oath-taker) affixed with the notary seal. Affidavits must: (1) be made on personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) show that the affiant is competent to testify on the relevant matter. Fed. R. Civ. P. 56(c)(4). Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). An unsworn statement is incompetent to raise a fact issue precluding summary judgment. *See id.*; *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315–16 (3d Cir. 2019) (concluding that an unsworn statement that was not given under the penalty of perjury was "incompetent summary judgment evidence").

A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for a sworn affidavit or sworn declaration for purposes of summary judgment if certain statutory requirements are met. *See* 28 U.S.C. § 1746; *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."). Specifically, under § 1746, a declaration executed within the United States will substitute for a sworn affidavit if the declarant dates and subscribes the document as true under penalty of perjury in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2).

In short, § 1746 has these statutory requirements for an unsworn statement to substitute for a sworn affidavit: The declarant must (1) date and sign the document, and (2) subscribe its content as "true," (3) under "penalty of perjury," (4) in substantially the above-quoted pattern language. *Id.*

The parties agree that Dejnozka's unsworn statement complied with the requirements of § 1746. His statement was signed, dated, and subscribed as true and correct under penalty of perjury. *See id.* § 1746. We thus turn our focus to the six other inmate statements and then to Roy's own statement

## D.    Six Other Inmate Statements

The six other unsworn inmate statements, submitted by Roy, did not satisfy the § 1746 requirements. None of the statements contained any language declaring the statements were true or that they were made under penalty of perjury. Because the six other inmate statements did not satisfy § 1746, the district court properly declined to consider them for purposes of summary judgment.

To avoid this result, Roy argues that, *inter alia*, we should liberally construe these six inmate statements because: (1) the inmates may not have had knowledge of or access to the pattern language in § 1746, and (2) the statements were signed when his prison was closed due to the COVID-19 pandemic.

First, we decline Roy's invitation to "liberally construe" the six other inmate statements as satisfying § 1746 because there is no

language in them for us to liberally construe as substantially complying with the pattern language in § 1746.  None of the statements referred to "penalty of perjury" or were certified as true.

For instance, inmate Manning asserted within his statement that he was "submit[ting] the following testimony" and styled his statement as a court pleading, while inmate Salter acknowledged that his statement was made "in good faith."  This language does not come close to substantially complying with the requirements or pattern language of § 1746.

Second, we recognize that Roy's brief refers to "penalty of perjury" in two places: (1) in the table of contents; and (2) on page five in the heading: "AFFIDAVITS/DEPOSITIONS – under penalty of perjury[.]"  This language in Roy's brief, however, did not cure the defects in the six inmate statements.  The record contains no evidence that the inmates adopted (or even saw for that matter) this "penalty of perjury" language in Roy's brief. Further, no inmate signed either of these two pages in Roy's brief.

There is another, independent reason the inmates' unsworn statements do not comply with § 1746.  The "penalty of perjury" language contained within Roy's brief, but not within the individual inmates' own unsworn statements, would not make any of the six inmates subject to a perjury charge for making a false declaration in their separately attached statements. *See Dickinson v. Wainwright*, 626 F.2d 1184, 1186 (5th Cir. Unit B 1980) ("One who subscribes to a false statement under penalty of perjury pursuant to section 1746 may be charged with perjury under [18

U.S.C. § 1621], just as if the statement were made under oath."); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–06 (5th Cir. 1988) (declining to consider a self-described affidavit that was not declared to be true and correct or made under penalty of perjury when "it allow[ed] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods").

Third, and in any event, Roy's arguments about inmate access fail because the key is what Roy knew as he procured the statements from the other inmates, not what the other inmates knew. Here, the magistrate judge informed Roy that he could submit "*declarations* (written statements of fact *signed under penalty of perjury under 28 U.S.C. § 1746*)." The unsworn statement Roy obtained from Dejnozka conformed to the § 1746 requirements, despite the challenges presented by the pandemic. Even before the magistrate judge's notice, Roy's own complaint affirmed that the facts set out in his complaint were true and correct under penalty of perjury.

For these reasons, the district court correctly did not consider the six unsworn inmate statements at the summary judgment stage.[7] *See Carr*, 338 F.3d at 1273 n.26.

---

[7] Inmate Mason's unsworn statement does not satisfy § 1746 for the additional reason that it was not dated. *See* 28 U.S.C. § 1746.

### E.    Roy's Statement

Roy's own unsworn statement arguably presents a closer question. We previously have not addressed whether an unsworn statement complied with § 1746 when: (1) the statement was not subscribed as true or correct under penalty of perjury by a declarant-plaintiff, but (2) the statement was attached as an exhibit to and part of a declarant-plaintiff's 61-page brief that contained "penalty of perjury" language on two pages—in the table of contents and in the heading described above. Roy argues that his unsworn statement satisfied the standards of § 1746 because: (1) he was the author of the summary judgment brief and his unsworn statement, and (2) he stated in the brief's table of contents that the inmate statements were made "under penalty of perjury." We disagree.

First, Roy did not sign and date the pages of his brief that contain the "penalty of perjury" language. That alone leads us to conclude that his unsworn statement did not comply with § 1746.

Second, Roy's unsworn statement did not adopt or otherwise reference the "penalty of perjury" language in his brief. As discussed above, this unsigned "penalty of perjury" language in his brief—in the table of contents and a heading—would not make Roy subject to a perjury charge for intentional falsehoods in his statement. Rather, if accepted as sworn evidence here, Roy's statement would allow him to circumvent perjury penalties.

Third, neither Roy's statement nor his brief contained a certification that his statement ("the foregoing") was true and correct. As observed earlier, Roy was aware of § 1746's requirements, but he did not comply with the penalty of perjury requirement or certify that his statement was true.[8]

As the defendants rightly point out, the Fifth Circuit's decision in *Nissho-Iwai American Corp. v. Kline* provides sound guidance here. In that case, the unsworn affidavit was neither certified as true and correct nor made under penalty of perjury. 845 F.2d at 1305–06. The Fifth Circuit concluded that the unsworn affidavit did not substantially conform to the pattern language in § 1746. *Id.* at 1306. The court observed that the affidavit, as drafted, "allow[ed] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods." *Id.* ("Kline never

---

[8] Before concluding, we recite language on page thirty of Roy's brief that no party pointed out or argued about. Roy's brief included handwritten "Statement of Facts" and "Argument" sections, which immediately follow the last inmate statement. Roy ended the "Argument" section of his brief with this sentence: "Therefore, WEXFORD's Answer of denial is contradicted to [sic] the record, and Plaintiff's facts and allegations are to be taken as being 'true.'" Roy signed that page.

For completeness, however, we note this "true" language in the "Argument" section on page thirty of Roy's brief also would not subject Roy to a perjury charge, given that: (1) it contains no reference to his unsworn statement; (2) his unsworn statement itself contains no "true" language or reference to page thirty of the brief; and (3) this sentence on page thirty clearly is a closing argument in the brief and not a certification or verification of the accuracy of the content of Roy's statement.

declared her statement to be true and correct; therefore, her affidavit must be disregarded as summary judgment proof.").[9]

The Fifth Circuit's reasoning in *Nissho-Iwai American Corp.* is equally applicable here. Like the affidavit in that case, Roy's unsworn statement did not include any "penalty of perjury" language, nor did it contain a certification that his statement ("the foregoing") was "true and correct." Roy's unsworn statement, as drafted, would allow him "to circumvent the penalties for perjury in signing onto intentional falsehoods." *See id.* at 1306; *Dickinson*, 626 F.2d at 1185–86 (concluding that a prisoner who signed a

---

[9] Although the parties do not cite it, we have located a Second Circuit case that warrants discussion. In *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* an unsworn letter was signed with the statement, "[u]nder penalty of perjury, I make the statements contained herein," but it did not state the contents were true and correct. 185 F.3d 61, 65–66 (2d Cir. 1999). The Second Circuit concluded the letter *substantially* complied with the § 1746 requirements. *Id.* ("Although the letter does not contain the exact language of Section 1746 nor state that the contents are 'true and correct,' it substantially complies with these statutory requirements, which is all that this Section requires.").

Worsham is inapposite here. Unlike the unsworn letter in that case, Roy's unsworn statement did not comply with two § 1746 requirements: (1) it was not made under penalty of perjury; and (2) it did not declare (or certify, verify, or state) that its contents were true or correct. Thus, we have no occasion to address the narrow issue in *Worsham. See also Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 n.4 (5th Cir. 2021) ("[O]ur circuit does not appear to have addressed . . . whether a 'declaration' passes muster if . . . it was made 'under penalty of perjury' but does not represent that its contents are 'true and correct,' thereby failing to comply with the full text of § 1746.").

habeas corpus petition that complied with § 1746 "may be charged with perjury under [18 U.S.C. § 1621], just as if the statement were made under oath"). Therefore, Roy's unsworn statement "must be disregarded as summary judgment proof." *See Nissho-Iwai Am. Corp.*, 845 F.2d at 1306.

Under the totality of the facts here, we conclude that Roy's unsworn statement does not comply with § 1746 and the district court correctly did not consider Roy's unsworn statement, even though he labeled it as an "affidavit."

Further, as an independent, alternative conclusion, even if we assume *arguendo* that Roy's unsworn statement complied with § 1746 and constituted evidence at the summary judgment stage, that evidence would not change any result here as outlined below.

## F.    Evidence of Wexford's Policy or Custom

Without these inmate statements, Roy's "proof of a policy or custom rests entirely on a single incident of alleged unconstitutional activity." *Craig*, 643 F.3d at 1311. He produced no evidence that Wexford had a policy or custom of constitutional violations "so persistent and widespread as to be deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* at 1312 (quotation marks omitted).

To the extent that Roy contends he can show an unconstitutional custom or practice by Wexford based solely on the multiple delays that he experienced, this contention is

meritless. In *Craig*, this Court concluded that a prisoner could not establish that a private health care provider had an unconstitutional policy or custom when he "did not even present evidence that these practices had been employed by [the provider] for any other detainees." *Id.* at 1311. Without evidence demonstrating that other inmates were injured by Wexford's allegedly unconstitutional custom or practice, Roy cannot show that this custom or practice was "so widespread as to have the force of law." *Id.* at 1312 (quotation marks omitted). And even if Roy's statement satisfied § 1746, he still could not prevail on his deliberate indifference claim against Wexford because his inmate statement only addressed the medical delays that Roy himself experienced.

We also reject Roy's argument that the district court failed to address facts that would have precluded summary judgment. Roy's evidence related to only his own medical conditions and the delays that he experienced in receiving treatment for his own medical issues. Because Roy did not present evidence of another instance where Wexford's alleged policy or custom of delaying medical treatment exacerbated an inmate's medical condition, he failed to establish that Wexford was liable under § 1983. *See Swain*, 958 F.3d at 1091. Thus, we affirm the district court's grant of summary judgment in favor of Wexford.

### III.    GOVERNOR IVEY AND COMMISSIONER DUNN

### A.    Standard of Review

We review de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Under our Rule 3-1, a plaintiff who fails to object to a factual or legal conclusion in a magistrate judge's R&R after being informed of the time period for objections and the consequences of not objecting waives his right to challenge the unobjected-to determination on appeal. 11th Cir. R. 3-1. In the absence of a proper objection, however, this Court may review the issue in this civil appeal "for plain error if necessary in the interests of justice." *Id.* Once we determine that reviewing an unobjected-to error in an R&R is necessary in the interests of justice, then we apply the heightened civil plain error standard. "Under the civil plain error standard, 'we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.'" *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) (quoting *Roofing & Sheet*

*Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982)).

## B.    Supervisory Liability under Section 1983

Similar to municipalities, supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates based on a theory of *respondeat superior* or vicarious liability. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014). Rather, to hold a supervisor liable under § 1983, the plaintiff must show: (1) that the supervisor personally participated in the alleged unconstitutional conduct; or (2) there was a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* at 1047–48. This Court has explained that:

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1048 (cleaned up). "The deprivations that constitute widespread abuse . . . must be obvious, flagrant, rampant and of

continued duration, rather than isolated occurrences." *Id.* (quotation marks omitted).

## C.    Analysis

As an initial matter, although the R&R sufficiently informed Roy of the time period for objecting and the consequences for failing to object, he did not challenge the magistrate judge's recommendation that his claims against Governor Ivey and Commissioner Roy be dismissed. Accordingly, we may review Roy's argument that the district court erred by dismissing these claims for plain error only. *See* 11th Cir. R. 3-1.

In any event, the district court did not err, plainly or otherwise, in dismissing Roy's claims against these defendants. Roy did not allege that Governor Ivey or Commissioner Dunn personally participated in his alleged constitutional deprivations. He also did not plead specific facts that showed a causal connection between these defendants and the harm that he suffered. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Jaharis*, 297 F.3d at 1188. Roy's allegation that Governor Ivey had knowledge of his constitutional deprivations based on records in her possession was too speculative to establish that she had notice of "widespread abuse." *See Keith*, 749 F.3d at 1047–48.

Further, while Roy asserted that the defendants had a custom or policy of delaying medical treatment to inmates, he only alleged isolated incidents of unconstitutional misconduct, not "a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d

1283, 1290 (11th Cir. 2004) (quotation marks omitted). Because Roy failed to allege that Governor Ivey and Commissioner Dunn had a policy, custom, or practice of delaying medical treatment to inmates, the district court properly dismissed his claims against these defendants.

## IV.    OTHER ISSUES

Liberally construed, Roy's appellate brief also argues: (1) the district court failed to address the merits of his initial complaint; (2) he still can obtain a default judgment against the defendants; (3) the district court failed to address two motions that he filed; and (4) the district court failed to address his arguments and supporting evidence regarding the overcrowding of his prison and the failure of prison officials to protect inmates from violence and sexual assault.  All of these arguments lack merit.

First, the district court was under no obligation to consider the merits of the initial complaint, which was superseded by Roy's third amended complaint. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) (stating that an amended complaint supersedes and replaces the original complaint unless the amended complaint specifically refers to or adopts the earlier pleading).

Second, Roy could not obtain default judgment once the defendants responded to his complaint. *See* Fed. R. Civ. P. 55(b) (stating that, upon a plaintiff's request, the clerk must enter a

default judgment "against a defendant who has been defaulted for not appearing").

Third, Roy did not raise any supporting arguments explaining why the district court erred in failing to address two of his motions (nor did Roy even identify the motions that the court did not resolve). He thus has abandoned this argument on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Fourth, because Roy only raised deliberate indifference claims in his third amended complaint, we need not address his overcrowding and failure-to-protect arguments. *See Miller v. King,* 449 F.3d 1149, 1150 n.1 (11th Cir. 2006) (holding that, because the *pro se* plaintiff failed to raise a claim in the district court, we would not consider the claim for the first time on appeal).

## V.     CONCLUSION

In sum, we affirm (1) the district court's grant of summary judgment in favor of Wexford on Roy's deliberate indifference claim, and (2) the district court's dismissal of Roy's deliberate indifference claims against Governor Ivey and Commissioner Dunn.

**AFFIRMED.**